ALICE C. BAILEY as Executrix of the Will of William H. Bailey, Deceased, Appellee, v. THE CITY OF DES MOINES, Appellant.

Municipal corporations: SPECIAL ASSESSMENTS: LIMITATION OF
1  AMOUNT: ESTOPPEL. Where a city council refused the offer of petitioners for a street improvement to waive the statutory limitation of the amount of a special assessment, and proceeded to make the improvement on its own motion and regardless of the petition or consent of the property owners, the rejected offer could not be relied on as an estoppel against the property owners to insist on the statutory limitation of the amount of the assessment.

**Same:** PAROL EVIDENCE: IMPEACHMENT OF RECORD. A city council cannot impeach its own record that a street improvement was ordered by the council on its own motion, without reference to any consent or petition of property owners, by parol evidence that the improvement was petitioned for and the petition was considered, but that it was customary, where three-fourths of the council were in favor of the improvement, to make the record show that the resolution was passed on the council's own motion for the purpose of avoiding possible defects in the petition. .

**Same:** SPECIAL ASSESSMENTS: ESTOPPEL. The fact that the owner of property subject to special assessment was the city attorney and approved the form of contract for the improvement, would not estop his executrix from objecting to the assessment of his property on the ground that it exceeded the statutory limitation.

**Same:** EXCESSIVE ASSESSMENT: BURDEN OF PROOF. Where a city attempts to assess property for a street improvement in excess of the statutory limitation, it has the burden of showing some ground upon which the limitation can be avoided; and a property owner is not chargeable with bad faith in resisting the excessive assessment.

**Same:** PAVING: STATUTE: CONSTRUCTION. The term paving as used in the statute authorizing a city to improve a street by curbing, guttering, paving, etc., contemplates that the work shall all be done as one improvement, where the street has not already been curbed and guttered; and it cannot treat the work as separate and independent items, making them the subject of contract and assessment to the extent of twenty-five per cent of the value of the abutting property in each instance.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

THURSDAY, DECEMBER 12, 1912.

THE opinion states the case.—*Affirmed.*

*Robert O. Brennan, H. W. Byers* and *E. C. Carlson,* for appellant.

*Stipp & Perry,* for appellee.

WEAVER, J.—Certain special assessments having been levied upon city lots owned by William H. Bailey, since deceased, for expenses incurred in the paving, guttering, and curbing of a street known as Prospect boulevard, the owner appealed therefrom to the district court. Upon a hearing of the evidence the district court modified and reduced said assessments in the manner hereinafter mentioned, and the city appeals from said decision to this court.

The material facts may be stated as follows: Mr. Bailey became purchaser of the lots by contract in June, 1909. Prior to that time in the year 1907 or 1908, the city council had ordered the construction of a combined curb and gutter in front of the property, but the work done under this order had been rejected. A petition in which Mr. Bailey's grantors joined had also been presented to the council for paving the street. In this petition the signers waived, or offered to waive, the benefit of the statute which limits the liability of adjacent property to special assessment for any street improvement to 25 per cent. of its actual value. Thereafter, in April, 1909, the council, after the usual resolution of necessity, ordered the paving of said street, declaring in the resolution therefor that such order was made "without the petition of property owners." The work of paving thus ordered and the final construction of the curb and gutter were done practically at the same time, but under separate contracts. The schedule of assessments for the curbing was presented to the council on September 15, 1909, and five days later a like schedule for the cost of the pavement was also presented. Further proceedings for the consideration of objections and protests against said proposed assessments were carried along in parallel lines, and they were finally approved and levied at or near the same time. Mr. Bailey appeared at the hearings, and protested against the assessments on several grounds, but two of which are involved in this appeal, and to these alone do we give attention. These objections are (1) that the construction of the pavement, curb, and gutter constitute but

a single improvement, and that but one special assessment therefor can rightfully be levied upon the adjacent property for the expense so incurred; and (2) that the assessments levied by the council exceed in amount the one-fourth of the actual value of that part of the lots in question which is legally chargeable with such burden.

The council having overruled these objections, Mr. Bailey appealed to the district court, which, on hearing the evidence, held the objections well taken, and reduced the assessment for the combined improvement to the sum of $1,200, which it found to be the one-fourth of the actual value of the property. It is from this decision that the city has appealed.

I.     The first question argued by counsel is whether the appellee, as the heir or devisee or executrix of Mr. Bailey's estate, is estopped to claim the benefit of the above-cited statute. It is the contention of counsel that

1. MUNICIPAL CORPORATIONS: special assessments: limitation of amount; estoppel.

as Mr. Bailey's grantors had signed a petition waiving the benefit of the statutory limitation of the amount of special assessment, and as the proceedings for the construction of the pavement were already in progress when Bailey entered into the contract of purchase, he took the property subject to such waiver, and that neither he nor his heirs or representatives can be heard now to claim the benefit of the limitation. Under our statute the work of street improvement at the expense of adjacent property may be initiated in either of two ways: Upon the petition of the owners of a majority of the lineal front feet of the adjoining property, in which case a majority of the council is sufficient to pass such a resolution, or upon the council's own motion which authority may be exercised only when three-fourths of all the members of the council unite in adopting the proper resolution. Code, section 793. When the final order for such improvements is entered, it is required that the record shall be made to "show whether the improvement was petitioned for or made on the motion of

the council." Code, section 811. The authority to levy special assessment for such improvements is subject to the following restriction: "Such assessment shall not exceed twenty-five per centum of the actual value of the lot or tract at the time of the levy, and the last preceding assessment roll shall be taken as *prima facie* evidence of such value." Code Supp. 1907, section 792a. So far as the city records are con-- cerned, they do not disclose that the petition to which we have referred ever received any consideration at the hands of the council and still less do they show its acceptance or. approval. On the contrary, when, in obedience to the statute, the record is made to show upon whose initiation the improve-ment was. undertaken, it is there. declared it was "not upon petition of the property owners." For present purposes, it may be conceded that a property owner who petitions for an improvement, and as inducement to favorable action thereon offers to waive the benefit of the statutory restriction, can-not be heard to repudiate his undertaking after. his petition has been granted, and the improvement for which he has asked has been made; but it seems to us no less clear that, where the council does not accept the offer of the petitioner, and thereafter proceeds professedly and expressly upon its own motion to exercise its statutory power to make an improve-ment of that nature without reference to the request or con-sent of the persons interested, there is no principle of law or equity which will entitle the city to set up the offer or waiver contained in the rejected petition as an estoppel against the property owner's assertion of his statutory rights.

Extrinsic evidence was offered on behalf of the city that it was the custom of the council when an improvement was petitioned for, and three-fourths of the members were in favor **2. SAME: parol** thereof, to make the record show that the reso-**evidence: im-** lution was passed upon the council's own **peachment of** **record.** motion, and that this was done to avoid any trouble or complication which might arise over any after-discovered defect in the petition, although as a matter of fact

such petitions were considered and accorded influence in determining that question. In our judgment the trial court correctly refused to regard this testimony as either competent or material. The substance of such showing would be an impeachment by the city of its own records by parol evidence that, while such record expressly states that the action was taken upon the council's own motion, it was in fact taken upon the petition of the property owners. This, upon familiar principles, it cannot be allowed to do. It is true that persons who have petitioned for street improvements have quite frequently been held estopped to contest the assessments thus resulting because of irregularity in the preliminary proceedings, and it is not unreasonable to suppose that the existence of this rule was one reason for the enactment requiring the city to make of record the fact whether the work had been ordered upon petition therefor or upon the council's own motion. A petition granted is one thing; a petition rejected or not acted upon is quite another. Whether a waiver of this character made by a grantor binds or charges the property in the hands of a grantee who purchases it after the petition has been signed, but before the work has been completed, or any assessment made, is not necessarily involved in this record, and we do not undertake to decide it.

It is further argued that plaintiff is estopped to maintain this action because Mr. Bailey was himself the city's attorney from April, 1908, to December, 1900, and as such attorney, and after he purchased the property, approved the form of contract between the city and the paving contractor who performed the work We see none of the elements of estoppel in this transaction. His executrix does not now contest or deny the liability of his property for its just and proper proportion of said improvement, and surely the city suffers no wrong in being prevented from exacting more than such proportion.

3. SAME: special assessments: estoppel.

Again, it is said that the plaintiff does not come into

this equitable proceeding with clean hands, and therefore, whatever may be said of her strictly legal rights, she is not

**4. SAME: excessive assessment: burden of proof.** entitled to any relief at the hands of the court. We are at a loss to understand upon what principle of equity or of morals it can be said that Mr. Bailey or his executrix is chargeable with any lack of strict rectitude so far as the facts and circumstances are disclosed in this record. The appellant claims the right to assess this property for the expense of making these improvements. The appellee admits that right, and under the decree below her property is taxed for that purpose to an entire one-fourth of its value—the full proportion allowed by statute —but she denies and contests the right to burden her property in excess of that limit. The burden of showing some ground upon which the city may avoid such statutory restriction and compel this property or its owner to pay a larger proportion is upon the appellant. In our judgment that burden has not been sustained, and the district court did not err in so holding.

II.   A somewhat more difficult question is encountered when we come to consider whether the entire work of paving, curbing, and guttering is to be considered as a single improve-

**5. SAME: paving: statute: construction.** ment. The statute gives to cities power to improve any street by grading, parking, curbing, paving, and guttering the same and to assess the cost thereof upon abutting property subject to the limitation upon the maximum assessment hereinbefore mentioned. Code, section 792, and Code Supp., section 792a.

The argument on the part of the city is that this statute makes the work of paving, curbing, and guttering independent items of street improvement, and the council may lawfully so treat them, and make them the subject of separate and distinct contracts. Starting with this construction of the statute, it is insisted that the council did not exceed its powers in making the pavement, and the curb and gutter which border it, the subject of separate contracts, each of which in the

matter of assessments upon abutting property is to be considered without reference to the other, and for the cost of either of which assessments may be made up to the 25 per cent. limit. If this be true as broadly as claimed, then the owner of a lot abutting upon a city street is indeed in a desperate strait, for such construction would enable the city at one and the same time to park, curb, pave, and gutter the street by four separate contracts, followed by four separate special assessments each up to the full limit of 25 per cent. of the actual value. We cannot believe that such result or such possibility was contemplated by the Legislature. It is doubtless true that in the outlying and less crowded parts of a city it is sometimes found desirable to improve and use streets in an unpaved condition and sometimes to curb or gutter the same, and let the larger enterprise of paving await the growth of the city and the increase of traffic which shall justify it. Under such circumstances, we think there can be no reasonable doubt that the city can order either or any of such improvements, and lawfully provide for assessing the cost upon abutting property. But, when it undertakes to pave a street not already supplied with suitable curbs and gutters, we are of the opinion that "paving," as the word is used in the statute and as understood and employed in ordinary usage, includes both curb and gutter without which a pavement is manifestly incomplete. It has been held that authority to pave includes authority to complete the same by the construction of curbs and gutters because "the curbstones are necessary in order to secure the gutters, and are in this view a part of the pavement of the street." *Warren v. Henly,* 31 Iowa, 31; *Downing v. Des Moines,* 124 Iowa, 289. The different powers conferred upon the city for the improvement of streets are designed to meet different conditions and relieve different needs; but from the fact that under appropriate conditions the city may lawfully require either curbing, guttering, or paving it does not follow that, in ordering the paving of an uncurbed or unguttered street, it can make paving, guttering, and curb-

ing a matter of two or three independent improvements, and thereby avoid the limit which the law places upon the burden cast upon abutting property. A very similar question arose in New York where the limit of a special assessment for any one improvement is one-half of the value of the property. In that case, as in this, the city undertook to levy separate assessments for paving and for curbing and guttering, the aggregate of which assessments was in excess of the legal limit. The work was done under separate resolutions or orders, one of which was dated in the year 1871 and the other in 1872. Of this state of facts the court says:

If these assessments, though resulting from separate apportionments and though confirmed at different times, are for the expense of what is practically and really one improvement, then the phrase from the act of 1840, 'in any one case,' applies, and there was substantial error in the assessment. . . . If the paving of a street is so disconnected from other work upon the street in necessity and effect as to be a different and separate improvement from grading, regulating, setting of curb, and gutter stones and flagging, or if the adoption of a peculiar kind of pavement is so, then there may be said to have been two classes of improvement upon this street. If they are not so disconnected, then it cannot be said that there was that lapse of time between the ordering of them as to make them distinct. . . . That it was not all done at once does not necessarily determine that it was two distinct improvements. Necessarily regulating and grading must precede paving, and so must to some degree the setting of curb and gutter stones. Nor is the fact that there were different kinds of pavement on different parts of the street conclusive that these were distinct improvements. . . . If one improvement, then there should have been but one assessment; and, if but one assessment, it could not have exceeded the half assessed value of the lots, and, as it does exceed that, it is to some extent illegal. (*In re Walter*, 75 N. Y. 356.)

The propriety and justice of such holding is too manifest to require argument in its support. That the paving, curb-

ing, and guttering in cases of this character do constitute a single improvement is quite clear. That it is so regarded by engineers and others skilled in such work appears in evidence, and, even if such evidence be held inadmissible, the fact is one of common observation and common knowledge which the court cannot ignore. See our cases already cited. *Warren v. Henly*, 31 Iowa, 31; *Downing v. Des Moines*, 124 Iowa, 289. See, also, *Schenley v. Commonwealth*, 36 Pa. 29 (78 Am. Dec. 367) ; *Jacquemin v. Finnegan*, 39 Misc. Rep. 628 (80 N. Y. Supp. 207) ; *Huidekoper v. Meadville*, 83 Pa. 158. In the case before us the curb and guttering were first ordered and a curb and gutter were first constructed, but, being rejected by the city, they were reconstructed at or about the same time and part of the same general improvement with the paving. As already remarked, the mere difference in time between the orders upon which such work was done is not sufficient to make it anything more or less than a single improvement.

It follows from the foregoing discussion that the trial court did not err in treating the two assessments as constituting a single burden and applying thereto the limit fixed by the statute.

The judgment appealed from is therefore *Affirmed.*