CHICAGO, GREAT WESTERN RAILWAY COMPANY et al., Appellants, v. CITY OF COUNCIL BLUFFS, Appellee.

**MUNICIPAL CORPORATIONS:  Public Improvements—Assessments**
1, 4 **—25 Per Cent. Limitation.**  Proceedings for the paving of *two* different intersecting streets, both abutting on the property in question, embraced in the same resolutions, notice, bid and contract, together with proceedings, at the same time, for the curbing of one of the said streets, preparatory to the said paving, constitute but *one* improvement with reference to the 25 per cent. limit of assessment provided in Section 792-a, Code Supp., 1913.

**MUNICIPAL CORPORATIONS.  Public Improvements—Assessments**
2 **—Appeal—Jurisdiction to Change Assessment.**  On appeal from an assessment for a public improvement against a specific lot on which there are railway tracks, on the sole ground that the assessment is in excess of 25 per cent. of the value of the lot, the sole jurisdiction of the court is to determine the value of the *lot*, and therefrom determine the merits of the appeal.  Therefore, the court

may not, on such appeal, enter a determination of the value of the railway *right of way* and, in effect, transfer the assessment from the specific lot, as such, to such right of way.

**MUNICIPAL CORPORATIONS:** Public Improvements—Assessments 3 —Appeal—Reduction of Assessment—Evidence. On appeal from an assessment, evidence reviewed as to the value of a lot upon which there were railway tracks, and *held* that the value of the naked lot, plus the cost of laying the tracks thereon, was $900, and that the assessment should be reduced from $786 to $225.

**MUNICIPAL CORPORATIONS:** Public Improvements—Assessments 1, 4 —25 Per Cent. Limitation.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

THURSDAY, MAY 11, 1916.

APPEAL from an assessment against abutting property owners for special benefits claimed to have ensued from the construction of a pavement in front of the lots. Opinion states the facts.—*Reversed* as to plaintiffs' appeal; *affirmed* as to defendant's appeal.

*Saunders & Stuart,* for appellants.

*Kimball & Peterson* and *Louis W. Schneider,* for appellee.

GAYNOR, J.—In the city of Council Bluffs, Third Street runs north and south and intersects with Sixteenth Avenue, running east and west. The plaintiff Mason City & Fort Dodge Railway Company is the owner, and

1. MUNICIPAL COR-
PORATIONS:
public improve-
ments: assess-
ments: 25 per
cent. limita-
tion.

the Chicago, Great Western Railway Company the lessee, of two certain lots abutting on these streets, one described as Lot 12 in Block 20, and one as Lot 6, Block 19, both located at the intersection of these streets. Lot 12 is on the west side of Third Street, north of Sixteenth Avenue. Lot 6 is on the east side of Third Street and on the north side of Sixteenth Avenue. Both lots front on Third Street, the long side of each abutting on Sixteenth Avenue. There are two

railway tracks on Lot 12.   There is no building on Lot 6, and it is separated from the railway by Third Street and Sixteenth Avenue.   On May 16, 1910, the city council conceived the idea of paving these streets, and to that end passed a resolution of necessity and advisability, in which it determined that it was advisable and necessary to pave Third Street from Thirteenth Avenue to the south line of Sixteenth Avenue, and Sixteenth Avenue from the east line of High Street to Main Street. In this resolution, it was provided as follows:

"That the cost and expense of said paving be assessed against the property abutting on said portions of said streets and avenues in amount respectively in proportion to the respective special benefits conferred upon said respective property on account of said improvements, and not in excess of such benefits, and not to exceed 25 per centum of the actual value of the lot or tract at the time of the levy of the assessment."

In pursuance of said resolution, on June 20, 1910, the city passed a resolution ordering pavement on said streets within the limits fixed.   In said resolution it was provided that the cost and expense of said improvement be assessed to the property abutting upon the respective portions of said streets, avenues and alleys, in so far as the same may be assessed as provided by law and ordinance.   On July 13th, 19th and 25th, it published a notice to contractors.   In this notice, a time was fixed in which bids would be received for the construction of the contemplated pavement, in accordance with the resolutions aforesaid.   On the 12th day of September, 1910, a contract for the construction of pavement on both streets was let by the city of Council Bluffs to E. A. Wickhan.   This contract contained this provision:

"The city agrees to cause to be levied and assessed upon the property abutting upon said improvement or adjoining it, to the extent and in the manner as by law and ordinance provided, the costs of said work or improvement, and the city agrees to issue assessment certificates therefor."

In pursuance of this contract, the work of paving these streets was entered upon by Wickhan, and completed, in accordance with the contract, to the satisfaction of the city. Thereafter, on the 8th day of November, 1911, the city made an assessment of the costs and benefits of the improvement on Third Street against the property abutting thereon, and in the resolution assessed Lot 6, Block 19, property of plaintiff aforesaid, with the cost of said pavement in the sum of $201.08, if paid in cash, and $208.93 if paid in certificates, and fixed one fourth the value of the lot at $250. On the same day and in the same resolution of assessment, it assessed against Lot 12 in Block 20 the cost of the improvement on Third Street, in the sum of $189.41 if paid in cash, or $196.85 if paid in certificates, and fixed one fourth of the value of said Lot 12 at $250. On the 26th day of December, 1911, the city council passed a resolution of assessment, making an assessment of the costs and benefits of the pavement on Sixteenth Street, against said Lot 6, in the sum of $552.12 if paid in cash, or $573.86 if paid in certificates, and fixed one fourth of the value of the lot at $600. At the same time and in the same resolution, it assessed Lot 12 in Block 20, for improvements on Sixteenth Avenue, in the sum of $529.08 if paid in cash, or $549.88 if paid in certificates, and fixed one fourth of the value of said lot at $1,000. From both these assessments, the plaintiffs duly appealed to the district court, and from the action of the district court in the premises, the appeal is brought to this court by the plaintiffs. The appeals from the assessments made on the 8th of November and the assessments made on the 26th of December were separately taken, but were consolidated and are consolidated for the purposes of this trial, and the legality of the assessments in each instance is in question. The court from whose action this appeal is taken found affirmatively, and rightly so, that the paving on Third Street and on Sixteenth Avenue was, in fact, but one improvement, and that the special assessment, therefore, cannot, in the aggregate, exceed 25 per centum of the value of the property. The record presented

manifests the correctness of this holding. The court, however, found that Lot 6 was of the value of about $800, and that the special assessment for paving of both streets could not and should not exceed $200 cash, and reduced the amount of the assessment to $200. In this, too, the court was right. As to Lot 12, the court found that it was a part of the right of way of the defendant railway company, and was worth more than four times the amount assessed against it, and that such assessment should be affirmed; that this lot was of greater value than a mere vacant lot and the cost of construction of a track across it; that it became a part of the right of way through the city, and its value is much greater than the vacant lot and the cost of the track laid upon it. The plaintiff appeals from so much of the judgment as allows the assessment against Lot 12 to stand and remain as fixed by the city council, and from the judgment against the plaintiff for costs.

The only controversy here involves the amount of the assessment. The record discloses that the Mason City and Fort Dodge Railway Company is the absolute fee owner of these lots; that the Chicago, Great Western Railway Company is the lessee. The court seems to have assumed in his finding and judgment that the assessment was against the right of way of these companies, and not against these specific lots, in so far as the assessment related to Lot 12. It appears that plaintiffs have two tracks passing over this Lot 12, passing from north to south over the east end of this lot. There are no other tracks upon the lot. On Lot 12 are the main line track and the passing track.

The appeal is from the assessment of particular property. The appeal raises the question whether or not the assessment made by the city of the particular property against which it lodged the assessment was excessive. The record discloses that the appeal from the action of the council involved only the amount of the assessment. No question was raised as to the right to assess, nor did it involve any proceeding leading up to the assessment proper.

In the further decision of this case, we drop out of the consideration the assessment on Lot 6. The judgment of the district court as to that assessment is right. It was stipulated and agreed upon the trial that the assessment schedule showed as follows: For improvement on Sixteenth Avenue, assessment against Lot 12, Block 20, cash $529.08, certificates $549.88. Assessment for improvement on Third Street, against Lot 12, Block 20, $187.41 in cash, certificates $196.85—making a total assessment for the improvement of Third Street and Sixteenth Avenue, against Lot 12, in cash, $718.49.

The plaintiffs' appeal raises these questions: First, that the paving on Third Street and Sixteenth Avenue was but one improvement, and should have been assessed as such; second, that the assessment against Lot 12 as made

2. MUNICIPAL COR-  exceeded the benefits conferred by the im-
PORATIONS:
public improve-  provement; third, that it was greatly in excess
ments: assess-
ments: appeal:  of the limitation provided by statute, in that
jurisdiction to
change assess-  it greatly exceeded 25 per cent of the value
ment.
of the lot. The right to assess this particular lot for the improvement was not in question. Therefore, on appeal, it was not for the court to determine whether this lot should be or should not be assessed for the improvement. It was assessed by the city council; it was subject to assessment; no complaint was made of the assessment, except in that the amount was excessive. The duty of the court, therefore, on appeal was to ascertain and fix the right amount that should be assessed against this lot. The court, however, did not attempt to fix or determine the amount of assessment that should be lodged against this lot as a distinct substantive entity. It assumed to make an assessment against the right of way of the plaintiff company, not because the city had done ·so, but apparently because it was the thought of the court that the city had a right to do so. The effect of the conclusion of the court was to remove the assessment from Lot 12 as such, and transfer it to the right of way of the company. Thus the effect of its action was to annul the assessment against Lot 12,

and to transfer the assessment to the right of way of the railway company. Thereupon, the court, having transferred the assessment from the lot against which it was lodged by the city council, found that the entity to which it had transferred the assessment, to wit, the right of way, so greatly exceeded in value the total amount of the assessment against Lot 12 that the amount actually assessed did not exceed the benefits or the statutory limit. The court undoubtedly exceeded its appellate power in assuming to make an assessment against any property not assessed by the city. The appeal was from an assessment of a particular property, and the appeal involved only the amount to be lodged against that particular property. The court did not find, affirmatively, the value of this lot, nor whether the amount assessed exceeded the special benefits to the lot, or the statutory limitation. On an appeal from an assessment, the court is called upon to review the action of the body whose judgment is called in question, but it is limited to the issues tendered. The issue tendered to the court for trial involved only the amount of the assessment of a particular property. Whether other property should or could be assessed was not a matter for the determination of the court. It would not do for the court to say:

"We find that the assessment in question made against the particular property is in excess of the statutory limit, in that it exceeds more than 25 per cent of the actual value of the property assessed; yet we find that there is other property, abutting upon the improvement, which has not been assessed, but which could be assessed under the statute, and which ought to be assessed under the statute, and this other property far exceeds in value the amount of the assessment made for the improvement, and, therefore, we will permit the assessment to stand as fixed, although greatly in excess of the amount legally assessable against the property involved in the assessment from which the appeal is taken."

Prior to the passage of the act of the Thirty-second General Assembly now known as Section 791-i of the Code Supple-

ment of 1913, cities had no power to assess railroad right of ways for public improvements made upon streets upon which these right of ways were abutting. A right of way was simply an easement, and an easement was neither a lot nor a parcel of land upon which assessments were authorized, and it was held that, as the authority to levy special assessments depended upon statutory enactment, unless there was some statutory enactment authorizing it, the right did not exist.

We will not now enter into a discussion of the reasons upon which this holding was founded, but make reference to *City of Muscatine v. Chicago, R. I. & P. R. Co.*, 88 Iowa 291, and *Chicago, R. I. & P. R. Co. v. City of Ottumwa*, 112 Iowa 300. However, since these decisions, the law as found in Section 791-i, supra, was passed, and provides:

"The right of way of any railroad company fronting or abutting upon a street . . . within the limits of any city or town shall be subject to special assessments for .. . . street improvements authorized to be made under the provisions of Chapters 6 and 7, Title V of the Code, and amendatory acts thereto the same as any land or lot therein."

This section was intended to give to the city council, when making assessments for public improvements, the right to assess the right of way of any railroad company *the same as any land or lot* therein. We must keep in mind the distinction between the right to make, the manner of making, and the method provided for collecting, the assessments when made. The right to assess the right of way is now given by statute. The right is limited, however, the same as in assessments made on land or lots abutting upon the street; that is, it must not exceed the benefits conferred upon the property by the improvement, and must not exceed 25 per centum of the actual value.

Section 792-a provides:

"When any city or town council . . . levies any special assessment for any public improvement against any lot or tract of land, such special assessment shall be in proportion

to the special benefits conferred upon the property thereby and not in excess of such benefits. Such assessment shall not exceed 25 per centum of the actual value of the lot or tract at the time of levy, and the last preceding assessment roll shall be taken as prima-facie evidence of such value."

Reading Sections 791-i and 792-a together, because they must be read together to be understood in their application to the matter in hand, Section 791-i provides that the right of way of a railroad company shall be subject to special assessments for street improvements, the *same as any land or lot within* the city limits. Section 792-a provides that special assessments for public improvements against any lot or tract of land within the city shall be in proportion to the benefits conferred upon the property thereby, and not in excess of such benefits, and shall not exceed 25 per centum of the actual value of the lot or tract of land assessed at the time of the levy. The balance of Section 791-i provides only for the manner of collecting assessments made against a right of way, and says that the assessment, when properly made, shall be a debt personally from the railroad company or the lessee, and, unless paid, may be collected in the name of the city like any other debt. The creation of the liability, whether it be enforced against the abutting lot as a special assessment, or whether it be recovered from the owner by suit in action in a court, must antedate the right to enforce collection by either method. The right to create the liability comes first; then the creation of the liability; then the method of enforcing the liability. There can be no liability to be enforced by any of the methods until the liability is created by following the provisions of the statute which authorize the creation of the liability. The liability is created by the action of the city council. The right to create the liability is given to the city by the statute. These statutes must be strictly construed.

It is not contemplated—indeed, the statute negatives such a thought—that a special assessment may always attain to 25 per cent. of the actual value of the lot. Assessments never

can be rightly made to exceed the special benefits conferred upon the abutting property, the maximum being 25 per cent. of the actual value.

Section 792-b provides for the payment of a deficiency by the city, in the event that an assessment, rightly made, does not meet the full cost of the improvement. It must be borne in mind that the benefits referred to in this section for which assessments may be made are those accruing to the specific lots or tracts subject to assessment, and the property assessed must be the property benefited, and the property, to be assessable, must be property specially benefited by the improvement. Primarily, the statute fixes the property that may be assessed. The duty of determining what property is benefited, and the extent of the benefit, is vested in the municipality, as well as the right to make the assessment for the benefit when ascertained, with a right in the party aggrieved to appeal from their finding to the district court. Thus, as said in *Camp v. City of Davenport*, 151 Iowa 33:

"It is clear from the language of this statute that it has reference to the benefits accruing to specific lots or tracts, and that the assessment not only may not exceed such specific benefits, but cannot exceed one fourth of the value of the property assessed. Presumably the improvement will be of benefit to all abutting property, but a situation can readily be imagined, where, though enhancing the value of most abutting property, it might confer no benefit on a particular parcel of ground."

The section referred to in this opinion is 792-a, Code Supp., 1913. It follows, therefore, that, in determining whether or not the amount assessed exceeds the benefits, or the statutory limitation, we must keep in mind and consider the property against which the assessment is lodged. This assessment now under consideration was made by the city council against Lot 12. The question is, Did the amount assessed exceed the statutory limitation; i. e., did it exceed the benefits

conferred on Lot 12, or 25 per cent. of its actual value? This
brings us to the testimony touching the value of this lot.

Assuming that the court, in fixing the amount to be
assessed, determined it with a view to the benefits to Lot 12
alone, and did not attempt or make an assessment of the right
of way under the authority given the city to
do so in Section 791-i; assuming that the
assessment was approved as an assessment of
Lot 12 for benefits accruing to that lot by rea-
son of the improvement, and that, in referring
to the fact—as the court did refer to it—that
Lot 12 in Block 20 was a part of the right of way of the
railway company, and was therefore of more value than if it
had not been a part of the right of way of the railway com-
pany, it did not assume to assess the right of way, we come to
the testimony submitted. Expert real estate men in the city
of Council Bluffs were called to testify as to the actual value
of Lot 12. The highest valuation placed upon it by any wit-
ness was $700. On this valuation, the limit on the assess-
ment would be $175; but the evidence discloses that there were
two tracks crossing the east end of this lot, one the main
track and the other a passing track of plaintiff companies. The
assessment roll, showing the valuation placed upon the right
of way of the plaintiff Mason City & Fort Dodge Railway
Company, made from the certificate of the executive council,
as approved by the board of supervisors, taken from the min-
ute book of the board of supervisors and carried into the record
as a tax list of the city of Council Bluffs, shows that the
total valuation of the right of way of the Chicago, Great
Western Railroad and the Mason City & Fort Dodge Railroad
in Council Bluffs is $62,424; that the mileage within the limits
of Council Bluffs was 2.954 miles. The distance traversed by
these tracks over this right of way was approximately 50 feet.
The right of way broadens out, and there are a number of
others of these tracks on other lots. It is shown without any

3. MUNICIPAL COR-
PORATIONS:
public improve-
ments: assess-
ments: appeal:
reduction of as-
sessment: evi-
dence.

controversy that the entire cost of the construction of these tracks is about $2 per lineal foot.

The witness called to testify to the actual value of Lot 12 did not take into consideration these tracks upon it. With this basis for computation, we find that the value of this lot could not exceed the sum of $900, and the assessment, therefore, for the improvement made on Third Street and Sixteenth Avenue, so far as it benefited this lot, should not exceed $225, and at this sum we fix its liability on account of the whole improvement.

It appears, however, that, at the same time this assessment was made, an assessment was also made for curbing. The curbing assessment was made November 8, 1911. On account of said curbing, there was assessed against

4. MUNICIPAL COR- Lot 12 for curbing, $68.02. This was paid by
PORATIONS:
public improve- the plaintiff companies without protest. So
ments: assess-
ments: 25 per far as the record discloses, the curbing and
cent. limitation.
the paving were a part of the same general improvement of these streets, and the whole improvement should not exceed 25 per cent. of the actual value of the property beneficially affected. *Bailey v. City of Des Moines,* 158 Iowa 747. This would reduce the assessment by the amount paid for the curbing, and the plaintiff should have credit therefor upon the amount found to be due as a proper assessment for the entire improvement, leaving a balance due of $156.98. This is the balance which we find that plaintiff should pay on account of the improvement involved in this suit.

It is contended by appellee that, when the legislature authorized the assessment against the right of ways of railway companies within the limits of a city, it was the intention and purpose of the legislature to authorize the assessment against the entire right of way within the city limits, as a distinct entity, in all cases where any portion of the right of way abutted upon the improvement; that, in determining the amount of the assessment, the entire right of way, as a distinct entity within the limits of the city, should be considered,

and the benefits should have relationship to the entire entity; and that, if the amount of the assessment does not exceed 25 per cent. of the value of the entire entity, to wit, the right of way within the entire city, it cannot be said to be excessive. We do not enter upon the discussion of this point here. It is sufficient to say that the city did not undertake to, and did not, assess the right of way as an entire entity, but confined its assessment to the lots in question, segregating them as distinct entities from the entire property owned by the plaintiff for a right of way or other purposes within the city limits. The appeal was from the assessment of this lot, and involved only the amount of the assessment as to plaintiffs' appeal.

The case is therefore reversed and remanded, with instructions to enter a decree in accordance with this opinion.— *Affirmed* as to defendant's appeal. *Reversed* and *Remanded* on plaintiffs' appeal.

EVANS, C. J., LADD and SALINGER, JJ., concur.