F. W. CURTIS, Appellee, v. TOWN OF DUNLAP, Appellant.

**MUNICIPAL CORPORATIONS:** Special Assessments—Presumption.
1 Special assessments for street improvements are presumptively just and correct. Evidence held insufficient to overthrow the presumption.

**MUNICIPAL CORPORATIONS:** Public Improvements—Dual Systems
2 of Improvements. Two paving contracts initiated and carried on in good faith under separate resolutions do not constitute *one* system of improvement, even though they in part affect the same property.

Headnote 1: 28 Cyc. pp. 1167, 1191. Headnote 2: 28 Cyc. p. 1153.

*Appeal from Harrison District Court.*—J. S. DEWELL, Judge.

NOVEMBER 16, 1926.

This is an appeal from paving assessments. The trial court reduced the assessments. The defendant appeals.—*Reversed.*

*Robertson & Havens,* for appellant.

*M. B. Baily* and *William P. Welch,* for appellee.

MORLING, J.—This case was tried below and is submitted here with the cases of *Baily v. Town of Dunlap* (Iowa), 210 N. W. 803 (not officially reported), and *Jordan v. Town of Dunlap*

1. MUNICIPAL CORPORATIONS: special assessments: presumption.

(Iowa), 210 N. W. 804 (not officially reported). Two paving assessments were levied, one denominated as under Contract Number 1, and the other under Contract Number 2. Contract Number 1 was the main contract for paving the streets of Dunlap generally. Number 2 was for paving First Street from the alley in Block 20 to the alley in Block 17, a distance of two half blocks, and the Iowa Street intersection. The map shows also about 80 feet between Blocks 18 and 19 west from the intersection to be paved. The

second contract also covers paving of the alley in Block 16. The total assessment for the main contract is upwards of $180,000, and for the second contract, nearly $10,000.

The contracts were made under separate resolutions. No objection was made before the council that the improvements were in fact one, and they are treated throughout the record as made under distinct and separate proceedings. 2. MUNICIPAL CORPORATIONS: public improvements: dual systems of improvements. The court found that the "improvements ran concurrently, and were continuous, and therefore in equity, if not in law, constitute one general system of improvements," etc. The record does not sustain this finding. The improvements must be held to have been distinct, and the property benefited separately assessable for each. *Bailey v. City of Des Moines,* 158 Iowa 747; *Miller v. City of Sheldon,* 198 Iowa 855, 858; *Chicago, G. W. R. Co. v. City of Council Bluffs,* 176 Iowa 247; *Durst v. City of Des Moines,* 164 Iowa 82. It is conceded that the objection that the assessments were in excess of the 25 per cent limitation under Section 792-a, 1913 Supplement, was not properly made before the town council. The plaintiff's argument is that the assessments were in excess of benefits, and that that objection was made before the council, and properly sustained by the trial court. This contention is the only one presented for consideration.

Section 792-a places three restrictions upon special assessments: 1. That they shall be in proportion to special benefits. 2. Not in excess of such benefits. 3. Not exceeding 25 per centum of the actual value. The actual value at the time of the levy and after the improvement is determinative of the special limitation of 25 per cent. *Belknap v. City of Onawa,* 192 Iowa 1383. The immediate increase in reasonable market value resulting from the improvement is not, however, determinative of the special benefits received. *In re Appeal of Hume,* 202 Iowa ——; *Diesing v. City of Marshalltown,* 199 Iowa 1270. In *Chicago, R. I. & P. R. Co. v. City of Centerville,* 172 Iowa 444, 447, this court said:

"Speaking generally, there is a fair presumption that all real estate receives some degree of benefit from the permanent improvement of a street upon which it abuts. It is upon such presumption that the whole system of special assessments for local improvements is justified and sustained. Acting upon such

presumption, city councils have been clothed with a certain degree of legislative power to determine when it is expedient and proper to pave any given street or streets, and to provide, within certain limitations, how the cost thereof shall be defrayed. This discretion includes the authority to assess such cost upon the abutting property, in proportion to the benefits accruing to such property. It follows, we think, that the order of the city council, acting in accordance with the statute for the paving of the street and assessment of the cost upon abutting property, is not subject to control or interference by the courts; and (still assuming that the provisions of the statute have otherwise been observed) the question to be considered, upon an appeal from the assessment made, is whether the burden has been distributed or apportioned upon the several items of abutting property with due reference to the benefits they derive from the improvement. In other words, the action of the council, in ordering the pavement and providing that the cost shall be assessed upon the abutting property, is a legislative determination that the improvement is expedient and proper, and that the property abutting upon the improvement will be benefited thereby; and such determination cannot be set aside or overruled in a judicial proceeding. * * * while the owner of abutting property may object that it has been over-assessed, he cannot, if the proceedings have otherwise been regular, be heard to say that it is not liable to be assessed at all. * * * But even though it were competent for the appellee to allege and prove that its property receives no benefit from the street improvement, we are clearly of the opinion that the record fails to sustain its position. * * * In support of its denial of all benefits by reason of this work, it points first to the fact that its railway at this point lies somewhat to the south of the business center * * * It then notes with special emphasis that the right of way is devoted solely to the business of operating a railroad * * * and then argues generally from the surrounding circumstances that neither the railroad as such nor the company owning it can reap any tangible advantage or profit from such improvement; and, under the law, no assessment for the expense thereof can be imposed upon the right of way. The argument proceeds upon a mistaken conception of the effect of the statute which provides for assessments in proportion to benefits. It certainly does not mean that, before such an assessment can be

levied and enforced, the city must be able to show that, by reason of the paving, the abutting property has been advanced in market value to the extent of the assessment, or point out in detail the specific way and manner in which the requisite benefits are to be realized in the future. Were such to be the rule, few, if any, schemes of local improvement at the expense of the property immediately affected could ever be accomplished. It is natural for the average property owner to resent the burden thus laid upon him, and he easily persuades himself that the thing for which he is asked to pay is a detriment, rather than a benefit, to his land; and ordinarily it is not difficult for him to find plenty of sympathizing neighbors who will unite in supporting his contention. Indeed, the benefits to be derived in such cases are ordinarily not instant upon the inception or completion of the improvement, but materialize with the developments of the future. They are none the less benefits because their full fruition is postponed, or because the present use to which the property is devoted is not of a character to be materially affected by the improvement.''

In *Early v. City of Fort Dodge,* 136 Iowa 187, 189, it is said:

''It makes little difference what fanciful theories or arbitrary rules the city council or the court may employ in discussing the question, the final and decisive inquiry is whether the assessment, when made, is just and equitable, and bears some reasonable proportion to the benefits which the property derives from the improvements for which payment is to be made. * * * Under our statute, the true rule, while prohibiting an assessment in excess of the benefits to the property, requires that the burdens be distributed ratably and proportionately upon all of the abutting property in the taxing or assessment district. Both requirements must be satisfied before a just and equitable assessment can be had.''

No claim is made that the assessments were disproportionate between the properties benefited. The parties limited their evidence to the question of reasonable market value before and immediately after the improvements were completed. The Curtis lots in question are the two west lots of the south tier of Block 17. Each has a 25-foot frontage on the Iowa Street pavement to the south. The paving of First Street under the second

contract referred to extends along the entire west side of Lot 20
to the alley at the north end. The council valued them at $500
each, without the paving. The proportionate share of Lot 20 of
the cost of the main paving was computed at $380.52, and that
of Lot 19, at $380.51. The council added to the value of each lot
such proportion, and, determining the total amount to be the
value of the lot as improved, fixed the assessment at 25 per cent,
or $220.13 against each lot for the main paving.

For the second assessment, the council placed the same value,
$500, on each lot unimproved, apportioned to Lot 20, as its share
of the cost of the second improvement, $495.52, and to Lot 19,
$353.80, making a gross value for Lot 20, $995.52, and for Lot
19, $853.80. The assessment for the second contract was made at
25 per cent of the values thus arrived at, $207.21 on Lot 19, and
$230.12 on Lot 20. The assessments for both improvements
totaled $450.25 against Lot 20 and $427.34 against Lot 19. The
plaintiff's testimony is that the lots were worth $200 each, with-
out the improvement, and that with the improvement Lot 19
would be worth $400, and Lot 20 would still be worth only $200.
In his next previous assessment roll, plaintiff had returned the
lots as worth, together, $500. The assessor testified that the
property was assessed at about 50 per cent of its value, and that
these lots were worth $500 each. Other witnesses for plaintiff
valued the lots at from $125 to $200 each, without the improve-
ment, and no more, or even less, with it. The reason given for
saying that they were worth no more, or worth less, after the
paving, was that the street grade was lowered, so as to necessitate
a retaining wall.

Damages resulting from a change of grade cannot be offset
against benefits from paving. Such damages may be claimed
only in the statutory manner. Code of 1897, Sections 785 to
787; *Ayer v. City of Perry*, 193 Iowa 181.

In each case, the plaintiff's witnesses consisted of the three
plaintiffs and relatives, or persons opposed to the improvement.
In the *Curtis* case, four of them, including plaintiff, admitted an
increase in value of from $50 to $200, an average of $87.50 for
the two lots. Defendant's witnesses valued the lots before the
improvement at $350 to $500 each, and afterward at from $600
to $800 each, disregarding, in the case of each improvement, any
benefit from the other. The increase in value of each lot from

the improvement, as given by them, ranged from $200 to $300. East of these lots, in the same block, fronting in the same direction, are the post office and three stores. In the tier of lots across, and fronting on the same street, are business houses, including a bank. There is testimony that the lots are no longer a part of the business part of town. Plaintiff says he holds the lots as an investment; that the town has a population of about 1,400, has three banks, and is a good town. It seems from the valuations in the paving assessment roll that there are a number of valuable properties in the three blocks involved in these appeals, and in Block 21, next east of Block 20. Further than the foregoing, the character and improvements of the vicinity, or of the town, are not shown. Whether the town is growing or stagnant, whether it is attractive for industries or residence, the extent of its industries and business, the character of the surrounding territory, its facilities and attractiveness for marketing, the condition of the highways approaching it, its prospects for trade or for growth, building, and improvement, the general effect upon the town of the paving, or other circumstances which might have a bearing upon the question of benefits present or to be anticipated in the near future, are not shown. The limitation respecting the value of the property is not in the case. The improvements must be accepted as distinct, for which separate assessment may be made. The same rule of apportionment seems to have been applied throughout the town. The engineer testified that the cost was apportioned according to area and to the benefits which the lots would derive from the improvement. The presumption is that the action of the council is correct, and that the assessment is just. The burden of proof is upon the appellant, to overcome this presumption. Opinions of witnesses in such cases as this are advisory, and their weight depends, among other things, largely upon the facts which the witness takes into consideration and relates, and the fullness of his statement of them, and the force which he gives to the various facts in arriving at his opinion. *Salinger v. Western Union Tel. Co.,* 147 Iowa 484; *Moore v. Chicago, R. I. & P. R. Co.,* 151 Iowa 353; 22 Corpus Juris 728. Market value or market price is not conclusive evidence of actual value. *City of Findlay v. Pertz,* 20 C. C. A. 662 (74 Fed. 681); 23 Corpus Juris 51. The law protected the plaintiff against an over-assessment in relation to

market value by the 25 per cent limitation. The plaintiff did not take advantage of the protection given by this provision of the law, in that he did not make that objection before the council. If the cost of the improvement was thought to be excessive in proportion to the benefits to the property generally proposed to be assessed, the plaintiff had his remedy before the council, by objecting to the resolutions of necessity. We are of the opinion, on the record before us, that the evidence did not justify the court in interfering with the action of the town council.

That there may be no misapprehension, we may add that we are not to be understood as countenancing the ascertainment of benefits or of increased value by merely adding to the value of the lot unimproved its proportion of the cost of the improvement. The evidence before us does not show that such method controlled the result to plaintiff's prejudice, or show what amount should have been assessed, or that such amount is less than was actually assessed.

The judgment is—*Reversed.*

DE GRAFF, C. J., and EVANS and ALBERT, JJ., concur.