J. W. TURLEY, Appellant, v. INCORPORATED TOWN OF DYERSVILLE, Appellee.

**MUNICIPAL CORPORATIONS:**  Public Improvements—Resolution of
1 Necessity—Width of Paving.  A resolution of necessity is not rendered invalid because it fixes the width of the proposed paving at a figure which is in excess of the then ordinance-fixed distance between

the curb lines, it appearing that, subsequent to the resolution, the curb lines were so adjusted by ordinance as to correspond with the width of the proposed paving.

MUNICIPAL CORPORATIONS: Special Assessments—Value of Property—Elements. In determining the value of real property as the basis for a special assessment, due consideration should be given to its location and adaptability for residence or business purposes, its assessed value, offers made for it, if any, at a public auction, along with the past, present, and future prospects of the city or town.

MUNICIPAL CORPORATIONS: Special Assessments—Permissible and Nonpermissible Items. The cost of a storm sewer, rendered necessary in connection with a paving project, may be included in the assessable cost of said paving; *but not a charge for attorney fees.*

Headnote 1: 28 Cyc. p. 978. Headnote 2: 28 Cyc. p. 1156. Headnote 3: 28 Cyc. pp. 1153, 1154 (Anno.)

Headnote 1: 25 R. C. L. 154. Headnote 2: 28 L. R. A. (N.S.) 1160; 25 R. C. L. 136.

*Appeal from Dubuque District Court.*—D. E. MAGUIRE, Judge.

JANUARY 11, 1927.

Appeal from a decree fixing certain special assessments against the property of appellant. The facts appear in the opinion.—*Modified and affirmed.*

*M. H. Czizek,* for appellant.

*Kenline, Roedell, Hoffman & Tierney* and *Tomlinson & Tomlinson,* for appellee.

FAVILLE, J.—Both parties to this action appeal. The landowner is designated as the appellant, and the municipality as the appellee. At the outset, we deem it not improper to note that we are confronted by an abstract of 141 pages, an amended abstract of 74 pages, an exhibit consisting of a typewritten transcript of 120 pages, one brief of 120 pages, another of 94 pages, and a third of 19 pages; and in said briefs there is a grand total of 233 citations for our consideration. Accompanying these are numerous charts, plats, photo-

graphs, and other exhibits. This voluminous, formidable, and unnecessarily verbose record presents the question of special assessment for paving levied upon four lots in the town of Dyersville. Objections to the assessment were filed by the appellant before the city council, and an appeal was taken to the district court, which modified the assessment in some particulars; and from the decree of the district court the respective parties appeal.

I. The first question that confronts us is with regard to the sufficiency of the resolution of necessity which was adopted by the city council. The resolution of necessity provided for an extensive amount of paving in the appellee town, and among other things, for paving upon Main Street. Appellant's lots are located on the north side of Main Street, between Walnut and Willow Streets. The width of Main Street between the property lines is 80 feet. The resolution of necessity provided that Main Street should be paved opposite appellant's property from the center of Walnut Street to the center of Willow Street, for a width of 48 feet. There is no contention that the resolution of necessity was not legally adopted, nor that the improvement was not constructed in accordance with the resolution of necessity; but appellant's contention at this point is that, at the time of the adoption of the resolution of necessity, there was an ordinance fixing the curb lines of Main Street, in the block in question, at 20 feet from the property lines on each side of the street. In other words, with a street 80 feet in width, the curb lines had been fixed by ordinance 20 feet from the property line on each side of the street, leaving the used portion of the street but half of the actual street width. Subsequent to the adoption of the resolution of necessity, the former ordinance fixing the curb lines was repealed, and a new ordinance establishing the curb lines in accordance with the new improvement was enacted. Our inquiry at this point in this appeal is of necessity confined to the question of the validity of the resolution of necessity. The fact that the resolution of necessity recited that the width of the proposed improvement in the existing street should be 48 feet, and that the construction of such improvement would eventually require a change in the curb line which had been previously established by ordinance, did not, in and of itself, render the resolution of necessity invalid and void. The city

had jurisdiction of the street for its entire width, to wit, 80 feet. The appellant, as a property owner, was clearly advised by the resolution of necessity that it was proposed to construct the improvement at a width of 48 feet in front of his property. It was so constructed. That the resolution of necessity may have been inconsistent with a then existing ordinance respecting the curb line cannot affect the appellant's rights in this appeal. If he had other remedies, they do not affect the sufficiency of the resolution of necessity. The purpose of the resolution of necessity is to advise the property owners of the improvement which the council contemplates making. This the resolution in the instant case clearly and sufficiently did. The appellant has no ground of complaint because of any matters involved in the resolution of necessity. It was sufficient, under the statute and under our repeated holdings. See *Goldsmith v. City of Sac City,* 198 Iowa 1103; *Nixon v. City of Burlington,* 141 Iowa 316; *Wigodsky v. Town of Holstein,* 195 Iowa 910; *Manning v. City of Ames,* 192 Iowa 998; *Cardell v. City of Perry,* 201 Iowa 628.

II. Appellant's main contention is that the assessment against the property is in excess of the benefits derived from the improvement and in excess of 25 per cent of the actual value of the property.

Main Street runs east and west. The appellant owns four lots on the north side of Main Street, between Walnut and Willow Streets. These lots are described as Lots 428, 429, 1 of 430, and 1 of 431. Each of said lots is 66 feet in width, abutting upon Main Street. They vary in depth, because of subdivisions and the sale of a portion of the rear of the lots. Lots 428 and 429 are 115 feet in depth, and Lot 1 of 430 has been reduced by the sale of a strip 14 x 42 feet in the rear of the lot. Lot 1 of 431 has a depth of 73 feet. Lot 428 is the farthest west of the lots, and is at the corner of Main and Walnut Streets. Formerly, a livery barn was located upon this lot, which naturally, in the course of time, evolved into a garage, and was used as such at the time of the improvement. East of the garage and on the same lot is a small building used as an electrical shop. Lot 429 is vacant, as is Lot 1 of 430. Lot 431 is appellant's residence. At one time, this building was used for a threefold purpose: as a store, a boarding house, and a saloon. Like the

ancient livery barn which was transformed into a garage, in the onward march of events the saloon building became metamorphosed into an apartment house. The building consists of three apartments, in one of which the appellant lives, and the other two are rented. Directly across the street from appellant's lots are lots of a similar frontage, all of which are occupied by residences.

The city council fixed the assessments upon said lots as follows: Lot 428 at $658.73; Lot 429 at $658.73; Lot 1 of 430 at $644.76; Lot 1 of 431 at $592.88. The court fixed the assessments on said lots as follows: Lot 428 at $650.67; Lot 429 at $625; Lot 1 of 430 at $550; Lot 1 of 431 at $455.66.

With regard to Lot 428, upon which stood the livery barn that was transformed into a garage, the evidence shows that, in the comparatively short time between the levy of the assessment and the trial of this cause, another transformation, also quite natural in character, had taken place, and the ubiquitous filling station had erected its head upon said lot. This lot was sold by the appellant for $8,000. It clearly appears that the assessment against this lot was within the statutory limitation, and we fail to find in the record any substantial ground upon which the assessment levied against it should be reduced.

The same is true with regard to Lot 1 of 431, upon which the apartment house is located. The value of this lot is clearly established by the record to be sufficient to sustain the assessment made by the court. We find no reason to disturb the assessments against these two lots.

The storm center of the lawsuit rages about the assessments levied against Lot 429 and Lot 1 of 430, which are the two vacant lots. Testimony was offered by both sides in respect to the value of said lots. As is usual in such cases, there is a very wide variance in the testimony of the witnesses in regard to the value. The testimony of the appellant's witnesses with respect to Lot 429 fixed its value at from $800 to $1,000. The witnesses for the appellee fixed the valuation of said lot in varying amounts from $2,000 to $3,500. The trial court fixed the valuation of said lot at $2,500, which reduced the original assessment as above indicated. In regard to Lot 1 of 430, the appellant's witnesses were more nearly in agreement in fixing its value at $500, while the witnesses for the appellee varied in amounts from

$2,000 to $3,500. The trial court fixed the valuation of this lot at $2,200, which resulted in a reduction of the assessment as above shown.

The evidence showed that the town of Dyersville has had a slow but steady growth. It has increased in population from 1323 in the year 1900 to 1933 in the year 1920. The record shows that the business district of the town was formerly located near to the river, and about three blocks west of the appellant's lots, and that the business district has expanded and grown in the direction of said lots; and it appears that said two lots are among the most available, if not in fact the most available and desirable, for future business locations in said town. As might have been expected, the evidence in regard to the future prospects of the town varies widely, and is colored doubtless by that somewhat mysterious thing modernly referred to as "the psychology of the situation." Certain parties evidently deplore the passing of the saloon, which it appears flourished in the appellee at an early day, and see no substantial future growth or development possible in the community; and the vacant lots of appellant will not, according to said witnesses, be needed within a reasonable time for business purposes. On the other hand, there are witnesses who evince great loyalty to the "old home. town," and whose vision and enthusiasm are expressed in the opinion that the town will grow and develop in the future, and that appellant's lots will not only be available for business structures, but that an imperative necessity will require their use for such purposes. The town appears to be favorably located, with good railroad facilities, and upon a primary highway that is greatly used. The surrounding community is wealthy and prosperous.

The statute provides that the assessment shall not exceed 25 per cent of the actual value of the property assessed, and it also provides that in determining such value the last preceding assessment roll shall be taken as prima-facie evidence of the actual value. Code Supplement, 1913, Section 792-a (Code of 1924, Section 6021). The last preceding assessment roll showed that the value of Lot 429 was fixed at $600, and Lot 1 of 430 was placed at $400. It is to be noticed that the statute makes this prima-facie evidence of the actual value, and it is a

2. Municipal Corporations: special assessments: value of property: elements.

matter proper to be taken into consideration in determining the actual value of the lots. It also appears from the record that, after the paving in question had been constructed, and in September of 1923, the appellant conducted a sale at public auction of said Lots 429 and 1 of 430. It appears that the sale was advertised for two weeks in a local newspaper, and was conducted by a public auctioneer. It appears that the best offer received at this public auction for Lot 429, in its then condition, was $1,150, and for Lot 1 of 430, $500. It also appears that appellant had offered to sell Lot 429 for $1,000. While this evidence is not conclusive on the matter of value, it is of some aid in arriving at the actual value of the premises at the time. It is true that the question of the probable future growth of the town and the uses to which the property may reasonably be put, and the prospects of such use, together with other matters, are proper to take into consideration in determining the actual value of the property, under the statute, as the basis for the limitation of a special assessment. But when all proper evidence bearing upon the question of value is taken into consideration, the ultimate question to be determined is the actual value of the property at the time, taking into consideration its condition with the improvement completed being taken into consideration. Future prospects of the property are proper to consider, but in the last analysis, they must be resolved into the determination of the present actual value. It is true that the determination of the actual value in cases of this character is necessarily to a degree conjectural and problematical. Absolute certainty and definite accuracy are not obtainable in such cases, but the actual value should be fixed as best can be determined from all of the evidence in the case. Due regard must be given to the assessment as fixed by the city council. This we have done, as well as to the persuasive effect of the decree of the district court; but, in view of the entire record, we are constrained to hold that the actual value of the two lots in question, even as fixed by the district court, is in excess of the actual value of the property at the time. We are disposed, under the record, to fix the actual value of Lot 429 at $1,875, and of Lot 1 of 430 at $1,650. The assessment against each of said lots cannot exceed 25 per cent of said amounts, and to this extent the decree of the district court will be modified.

III. Complaint is made of the method adopted by the engineer and the council in arriving at the amount of the assessment. It is evident from the record that the council took into consideration various factors and conditions in determining the ultimate benefits to appellant's property by reason of the improvement, but that all these were considered and resolved into the one final question of benefits conferred. No new or doubtful question of law is involved at this point in this case. We have recently had occasion to review the authorities in regard to the legal propositions presented, in *Curtis v. Town of Dunlap,* 202 Iowa 588; *Baily v. Town of Dunlap* (Iowa), 210 N. W. 803 (not officially reported); *Jordan v. Town of Dunlap* (Iowa), 210 N. W. 804 (not officially reported); and *In re Assessment for Resurfacing Fourth Street,* 203 Iowa ——. It is unnecessary that we review the authorities again.

IV. Complaint is made because in the determination of the total cost of the improvement there were included items for the "construction of a storm sewer," for "walk adjustment,"

3. MUNICIPAL COR-
PORATIONS: spe-
cial assessments:
permissible and
non-permissible
items.

and "for legal expenses." It appears that the construction of a storm sewer was a necessary and proper part of the improvement. Section 820 of the Code of 1897 (Code of 1924, Section 6018), provides that, in making up the assessment for the improvement, the council "shall ascertain the cost thereof, including the cost of the estimates, notices, inspection, and preparing the assessment and plat;" and it is for these items that assessment may be levied against the property of the landowner. The court granted the relief sought by the appellant in reducing the tax levied against his property to the extent of the amount so levied for the item of attorney's fees. The cross-appeal is filed in respect to this matter. We think the court was not in error in regard to it. There is no provision in the statute by which the specific item of attorney's fees in connection with an improvement of this character can be assessed against private property as a part of the cost of the improvement.

It is not made clear in the record just what is meant by the item "walk adjustment." The amount assessed for this item against each of the lots of the appellant was slightly in excess of $2.00. We assume that this was an essential and necessary

part of the construction of the improvement.  At least, upon the record, there is no basis for disturbing the assessment as to this item.

The decree of the trial court will be modified in the one respect to the extent hereinbefore pointed out.  Otherwise, it will be affirmed.  The costs in this court will be taxed one third to the appellant and two thirds to the appellee.—*Modified and affirmed.*

EVANS, C. J., and STEVENS, DE GRAFF, and VERMILION, JJ., concur.