SOPHIA B. VAIL, Appellant, v. CITY OF CHARITON, Appellee.

MUNICIPAL CORPORATIONS: Public Improvements, Etc.—Assess-
1 ments—Plans and Specifications—Substantial Compliance. Evi-
dence reviewed, on the issue of substantial compliance with the
plans and specifications of a paving contract, and held to au-
thorize an assessment.

MUNICIPAL CORPORATIONS: Public Improvements—Assessments
2 —Presumption. Principle recognized that an assessment of
benefits is presumptively correct.

*Appeal from Lucas District Court.*—FRANCIS M. HUNTER,
Judge.

THURSDAY, OCTOBER 18, 1917.

APPEAL from special assessment imposed on five lots, or
parts of lots, belonging to the plaintiff. The trial court
sustained the proposed assessments against the properties,
and the plaintiff appeals.—*Affirmed.*

*Stuart & Stuart* and *James A. Howe,* for appellant.

*J. W. Kridelbaugh,* for appellee.

PRESTON, J.—1. The trial in the district court was
upon objections filed before the city council, except that,
after the appeal had been taken, plaintiff filed an amend-
ment to such objections, setting up fraud.
A motion to strike this amendment was sus-
tained, and thereafter plaintiff filed another
amendment raising the same matter, but
stating her claim more specifically.

The fraud alleged is that there was a
departure between the work and the contract and specifi-
cations, and that the discrepancies were so great as that
there was fraud. It was sought thereby to bring the case,

1. MUNICIPAL
CORPORATIONS:
public im-
provements,
etc.: assess-
ments: plans
and specifica-
tions: sub-
stantial com-
pliance.

or this feature of it, within the rule announced in *Atkinson v. City of Webster City*, 177 Iowa 659. In the *Atkinson* case we held that, under the evidence, there was such a departure and such discrepancies that in fact there was no good-faith attempt to comply with the contract, and that this was not known to the property owner at the time the objections were filed, and could not have been discovered until the pavement was cut up and the evidence introduced at the trial.

But in the instant case the trial court found that the evidence failed to show that there was a substantial variation in any of the requirements of the contract and specifications, but that, on the other hand, it was shown that a very substantial compliance therewith had been had; that the city's officials and employes were very jealous of the plaintiff's interest, and a good and substantial improvement was afforded her property and the city's thoroughfare; that the charge of collusion and fraud was not established, nor was it established that the engineer and inspectors, or either of them, were so incompetent or so negligent that the improvement is an inferior one in any way, or that the contractors benefited thereby, and that the plaintiff suffered correspondingly. After reading the record, we agree with the finding of the trial court. This disposes of plaintiff's main contentions.

The appellant relies on the *Atkinson* case, supra, and like cases, while appellee relies largely on the case of *In re Appeal of Apple*, 161 Iowa 314, 320, and similar cases. We think that the case is more like the *Apple* case, and that such case is controlling here. No further attention need be paid to the claim of fraud.

The objections filed before the council are, stated as briefly as may be, substantially that the cement concrete foundation was not five inches in thickness, as required by

the contract; that the stone was of inferior quality, containing dust and dirt, and not of the required hardness; that the sand used contained dust and dirt and was not as required; that the gravel was unwashed, or did not have the dirt removed as required; that some of the brick were checked and cracked, and that they were not thrown out, and that they did not comply with the test; that the engineer placed in charge of the work by the defendant was incompetent and negligent. Plaintiff says in argument that, from the record, the contractor was violating the terms of his contract, defrauding the plaintiff and other taxpayers, and thereby perpetrated a constructive or legal fraud, even though actual fraud was not intended or established by the record. We have already disposed of the question of fraud. As to the engineer, appellee concedes that the first engineer, who had charge of the first two blocks of pavement laid, which two blocks did not include any of the paving in front of plaintiff's property, was not satisfactory, and he was removed. A competent engineer was put in his place, who accepted and approved the work.

It may be well to refer to the evidence in a general way, but in these fact cases it is not our practice to set it out in detail. As to the stone, the trial court found that it was suitable for foundation purposes. Appellant introduced evidence that the stone was dark in color, or appeared yellow, and stated how it could be crushed. The specification does not say that the limestone required must be so hard that it cannot be crushed by the means testified to, and appellant introduced no evidence to prove that hard limestone could not be so crushed, or that it might not be of a dark color, or yellow. A witness for appellant testifies that he thinks the quality of the rock was pretty fair; that it was limestone. Another witness for appellant says that, upon the instruction of the city engineer, he sent some of the

stone to Ames to find if it was suitable for the purpose intended. The report on this was that it was magnesia limestone, and suitable for the purpose if free from dirt. It was passed by the engineer representing the city. A witness for appellee, who was the engineer in charge of sewer construction, and who had had experience in paving, described one pile of stone, and stated that it would meet the requirements of the specifications. Another witness says that this pile of stone was the same as used in all the pavement. Another witness says that he dug into the concrete near plaintiff's property, and that it was unusually hard. One of appellant's witnesses says that they drilled through the cement, and it was very hard, and that he noticed the texture of the cement foundation, and it was solid; that he did not see where a mixture of cement could be better, or a mixture of crushed stone and sand; that he used a chisel and sledge hammer to take it up with; that he tried, but could not cut it with an ordinary pick; that this condition applied to the block in which plaintiff's property is situated. Another witness of experience says he found the concrete hard, and that it required a chisel to cut it. At the time of the trial, the pavement had been laid a year and a half, and there was no evidence to show that, at the time of the trial, there was any defect in the pavement, so that we think there was clearly a substantial compliance with the contract as to stone.

Another claim of appellant's is that there was so much dirt in the stone that it would not make good concrete. One witness says that there was more or less dirt in that special pile, and he thought it was dirt that got there in handling, probably out of the bottom of the car. Other witnesses say that it was not dirt, but seemed like particles of rock, and that it came from the abrasion in the handling of it—dust from the rock as they proceeded to handle it; did not notice the dust when they were not handling it. Another says it

had some dust from the crushing of the rock, but does not think there was any street dirt or soil. The witness who stated, as above, that there was dirt, was employed by the property owners where this stone was used, to see that they got a good job. He never made any complaint to the city officials regarding the quality or the dust or the dirt. Other witnesses testify that cement will not mix with dirt, but they agree that there is always dust present in a large pile of stone, and that, unless there is a large quantity, it is not screened. It seems to us that, if there had been dirt, the pavement would not have been as hard as the evidence before set out shows it was.

As to the brick, it is true that many were rejected and thrown out, but the weight of the evidence is, taking it all together, that the brick used complied with the test, and that all defective brick was rejected. Some of the brick was rejected before it was unloaded. The manufacturer of the brick was brought. The city sent to Ames and secured a man from the testing laboratory there, who stayed two or three days, and pronounced the brick sufficient under the specifications. On the first two blocks of paving, and before the beginning of the work on the pavement in issue, the city became dissatisfied with the in- spectors, and the city thereafter selected its own inspectors.

Another objection is as to the quality of the sand used, and the thickness of the sand cushion between the concrete and the brick. The specifications required that it should be river sand, free from loam and dirt, and that it should be spread so as to insure a uniform thickness of 1½ inches. Another provision is that no sand shall contain, under any condition, more than 10 per cent. of loam or organic matter. Appellant claims that the sand was dirty. Two witnesses so testified, but one of them said that the dirty sand was on another street. None of the witnesses

attempt to fix the percentage of loam or organic matter in the sand, and, even though there may have been some loam found in it, it is not shown that it was more than 10 per cent., which was allowed by the contract. It was passed by the city officials, the engineers and inspectors. As to the thickness of the cushion, but one witness testified that less than 1½ inches was used, but this witness was not present when the brick were laid, and does not testify that the brick were laid on the cushion which he claims he measured. Unless there is such proof, we ought not to say that the city officials and the inspectors and engineers did not perform their duty.

Finally, it is contended that the concrete base is less than 5 inches in thickness, as required by the contract. We quote from the opinion of the trial court on this point, and we are of opinion that his finding as to the fact is sustained by the evidence. The court said:

"The testimony upon this claim is very meagre. Quite a number of test holes, small holes, were bored through the concrete base, in a distance of three blocks, two of which were in front of plaintiff's property. These two holes measured 3½ to 4½ inches in thickness, but other holes showed 4 to 6 inches, and thereby averaged 5 inches or more. A small hole bored through a pavement from top to earth, and an attempt to measure the bottom few inches, with the bottom uneven, as it is bound to be, is an unsatisfactory measurement. No doubt the foundation was not of uniform depth of 5 inches, or the sand cushion of 1½ inches. In the performance of work of this character, it is safe to say that compliance with every term and condition of the specifications, with mathematical exactness, is never attained, and where the variation is of a trivial and negligible character, and more especially where, as in this case, the city's engineers and inspectors, overseeing the work, acting in good faith and without collusion or fraud, passes the

work without objection, and the engineer finally accepts it, no ground is afforded for disapproving the assessment."

Without going into further detail as to the testimony, it is our conclusion, after reading the record, that there was, as found by the trial court, a substantial compliance with the contract, and that there is a good pavement. The holding in the *Atkinson* case did not change the rule of the prior cases as to substantial compliance with paving contracts, though the writer of that opinion expressed his own view that there should, perhaps, be a more strict compliance with the contract than that required in some of the cases. As we have stated, the finding in that case was that the contract was substantially ignored. It was also recognized in that case that in some instances property owners object to an assessment against their property, even where there has been full or substantial compliance with the contract, and that trivial objections are made in an attempt to defeat the assessment.

2. MUNICIPAL CORPORATIONS: public improvements: assessments: presumption.

2. It is contended by appellant that her property received no benefit, and it is argued that, this being so, no special assessment should be made, and that, in any event, the assessment should not exceed the actual benefit to the property. But counsel have not pointed out any evidence tending to show the amount of benefits to plaintiff's property less than the amount assessed; that is, we find no evidence as to the extent of the actual benefit. Under the authorities, it has been held that some benefit is presumed. Appellant has the burden to show that the benefit is not equal to the finding of the council, and, in the absence of evidence as to the extent of the actual benefit conferred, that determined by the council should be allowed to stand. *Camp v. City of Davenport*, 151 Iowa 33; *Owens v. City of Marion*, 127 Iowa 469; *Andre v. City of Burlington*, 141 Iowa 65.

3.   Appellant contends that the engineer who prepared the plat and schedule was, as a witness, unable to give the facts, and was unable to explain what he did or how it was done.  He was asked as a witness to give the different items of cost, and he stated that he could not do it without start-ing at the beginning and going over the whole matter, and the only reason he did not do so was because of the length of time it would take to figure it out.  He does testify fully, however, how he made up the plat and schedule, and, after reading his testimony, we think the point made by appellant is not well taken.

It is our conclusion that, under the whole record, the decree of the trial court was right, and it is therefore— *Affirmed.*

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.