WILHELM TOBEN, Appellee, v. TOWN OF MANSON, Appellant.

**MUNICIPAL CORPORATIONS:** Public Improvements—Assessments
1   **Against Agricultural Lands.** A municipal assessment against agri-
     cultural lands for paving may not be made on the basis of the value
     of the land *if* the land was abandoned for agricultural purposes
     and platted into city lots.

**MUNICIPAL CORPORATIONS:** Public Improvements—Loss of Right
2   **to Pay Assessment in Installments.** The right of a property owner
     whose land has been assessed for paving, to pay his assessment in
     installments, is wholly lost by his failure to file, within 30 days from
     the date of said assessment, the statutory agreement to pay, and to
     waive all illegalities and irregularities, even though such failure
     was occasioned by the property owner's *successful effort* in court to
     show that the assessment was substantially excessive.

EVANS, PRESTON, and FAVILLE, JJ., dissent.

*Appeal from Calhoun District Court.*—E. G. ALBERT, Judge.

APRIL 8, 1922.

THE opinion sufficiently states the case.—*Modified and af-
firmed.*

*V. P. McManus* and *Mitchell & Files,* for appellant.

*E. C. Stevenson,* for appellee.

WEAVER, J.—The appellee, Toben, owns a farm within the
corporate limits of the town of Manson, and immediately ad-
joining the town plat. In the year 1920, the town council, by
appropriate proceedings, undertook the paving
of a certain street extending from the central
portion of the plat northward along the west
boundary of appellee's farm. The improve-
ment having been completed, a schedule of pro-
posed assessments to defray the cost thereof was prepared, and

1. MUNICIPAL
   CORPORATIONS:
   public improve-
   ments: assess-
   ments against
   agricultural
   lands.

the amount shown as chargeable to the land in question was placed at $10,457.51. The plaintiff at the proper time appeared before the council and filed written objections thereto. The objections included many specifications; but, for the purposes of this appeal, they may be summed up in the claim that the proposed assessment was excessive and inequitable. The council sustained the objection in part, and ordered the assessment reduced to $9,000; but plaintiff, insisting that it was still excessive, appealed to the district court. After hearing the evidence, the trial court held with the plaintiff, finding that the fair market value of the land charged with such burden did not exceed $26,000, and that, under the statute, the assessment could not properly exceed one fourth of that sum, reduced the tax to $6,500, and ordered that plaintiff be allowed 20 days in which to pay said sum, or to file a waiver accepting such assessment, with privilege of paying in installments, as provided by statute. From this decree, the town of Manson has appealed. There was no appeal by the plaintiff, and we shall confine our discussion to questions raised on the behalf of the defendant.

I. The testimony is largely directed to the question of the value of the tract of land assessed. The paving extends along the west border of plaintiff's land for a distance of about 80 rods, and under our statute, the assessable area for such improvement is limited to a width of 300 feet. This area includes between 8 and 9 acres, out of a farm of 110 acres. The farm is shown to be a valuable and desirable property, well improved and cared for. It is used exclusively for agricultural purposes, but in location and character, could easily and no doubt profitably be platted and sold for residence purposes. As is not unusual upon such questions, witnesses equally well acquainted with the property, and, so far as we can tell, of equal intelligence and credibility, differ very widely in their estimates of its value, varying all the way from $1,000 to $4,000 per acre for the 300-foot strip. It is noticeable, however, that witnesses giving the highest estimates quite uniformly mention, as the ground of their judgment in this respect, the availability of the strip for conversion into town lots, and the prices which such lots might be expected to command. We are disposed to think that such estimates do not afford a sufficient or safe basis

upon which to fix values for present assessment purposes. It is, of course, competent to show, not only the present use of the property, but its availability and desirability for other profitable uses; but the owner is under no compulsion to divide his land into city lots, or to use it otherwise than for farm purposes. Until he utilizes it in some other manner, it is assessable to him as so many acres, at whatever they may be worth in the market, and not as so many city lots.

Taking the situation as it is disclosed by the entire record, we are disposed to say that the trial court did not unreasonably reduce the plaintiff's assessment. The statute limits the authority of the town to make and enforce a special tax of this character to 25 per cent of the value of the property, and even as reduced by the court, this land of the plaintiff's is computed at some $3,000 or more per acre, a by no means merely nominal valuation; and the decree to that extent will be affirmed.

II.    Exception is taken by the appellant to that part of the decree which grants appellee the privilege of signing the statutory waiver and paying the assessment in seven annual install-

2. MUNICIPAL CORPORATIONS: public improvements: loss of right to pay assessment in installments.

ments. Code Supplement, 1913, Section 825. The objection seems to be well taken. The statute does not extend the privilege of paying these assessments in installments to all property owners. After providing that the tax, when levied and certified, "shall be payable at the office of the county treasurer," the act proceeds as follows:

"If the owner of any lot or parcel of land * * * shall, within 30 days from the date of such assessment, promise and agree in writing * * * that, in consideration of having the right to pay his assessment in installments, he will not make any objection of illegality or irregularity as to the assessment or levy of such tax * * * and will pay said assessment with interest * * * such tax so levied * * * shall be payable in seven equal installments * * * but where no such promise or agreement in writing shall be made by the owner * * * within said time, then the whole of said special assessment so levied upon and against the property of such owner shall mature at one time, and be due and payable, with interest from the date of acceptance of the work by the city council."

This seems to be in the nature of an inducement or reward offered to such property owners as are willing to waive and forego their right to object to or contest the validity or regularity of the tax, and execute their written promise to that effect within the prescribed period of 30 days from the date of the assessment; and such inducement is further emphasized by the added provision that, "where no such promise or agreement" is made by the owner "within said time," then the whole of said special assessment shall mature at one time.

The plaintiff did not make such promise or agreement within the statutory limit of time, but contested both the validity of the tax and the amount of the assessment, and, so far as shown, never at any time offered to comply with the condition precedent to the privilege of paying his tax in installments.

It follows that the decree appealed from will be modified by eliminating the clause allowing plaintiff to now execute the waiver and acquire the right to pay in installments. It was his right to refuse to make the promise, and to take his chance at defeating or reducing the tax. Doing so, he has secured the benefit of a reduction of some $4,000 from the original schedule, or $3,000 from the original levy; and under the statute, we regard it as clear that he cannot now claim the advantage which was offered to him on condition of a waiver of his right to contest.

Modified as above indicated, the decree will be affirmed.—*Modified and affirmed.*

Stevens, C. J., Arthur and De Graff, JJ., concur.

Preston, J. (dissenting).—I am not satisfied with the conclusion reached in Paragraph 2 of the opinion. I am inclined to affirm the decree of the lower court allowing the property owner to pay the assessment in installments. I shall state my reasons very briefly. I am not so sure but that, under the interpretation of the statute by the majority, the property owner is deprived of his constitutional right of appeal. 3 Corpus Juris 297. But I shall not go into that question. The majority opinion refers to the provision of the statute in regard to a written waiver as a reward or inducement to the property owner for signing the waiver. I am inclined to think that it is more in the nature of

a penalty, to compel the property owner to forego an appeal, no matter how arbitrary or unjust or illegal the assessment may be. A person with only a small homestead might be so situated, and the assessment so unreasonable and exorbitant, as that it would be utterly impossible for him to pay the entire assessment at once. In that case, he is compelled to submit, and sign the waiver, in order to save his property. The provisions of the statute quoted do not say, in so many words, that, unless he signs the waiver, he will be deprived of his right of appeal, but that is the effect of it. However, it does not read that, in consideration of the right to pay in installments, he will not make any objection by appeal. It may be thought that appeal is the only way by which he could object. This is not necessarily so. If the illegality should go to the extent that the assessment is void, he could make further objection by injunction, or perhaps would have some other appropriate remedy. In fact, the statute does allow an appeal. Section 839, Code, 1897; Chapter 172, Section 6, Acts of the Thirty-seventh General Assembly (Compiled Code, Sections 3903 and 3928). Under the statutes just referred to, the property owner must appeal from the action of the assessing board within 10 days. The statute as to waiver does not require him to sign such waiver for 30 days, so that the appeal must be taken before the expiration of his right to sign the waiver. If the appeal to the district court should be decided during the 20 days after the appeal and before the expiration of the 30 days, clearly the owner would be entitled, not only to appeal, but to pay in installments. The cited Section 825 provides that, when the assessment is levied and certified, it shall be payable at the office of the county treasurer, and further, that the waiver shall be indorsed on the certificate, bond, or separate agreement, within 30 days, etc. The appeal to the district court having been taken within 10 days, no valid certificate or certification to the county treasurer could be made thereafter, even within the 30 days allowed for signing the waiver. No proper or legal certificate could be issued until the case is finally determined on appeal. In the instant case, had a certificate issued, or had the defendants attempted to issue one for the assessment for the larger amount, it could not operate as against the reduced assessment by the district court. In other

words, there is no assessment which could be certified until such determination. Possibly, if the assessment as made by the council had been affirmed, and the original assessment allowed to stand, it might be said that, under such circumstances, that was the assessment. But in the instant case, the assessment was reduced by several thousand dollars. The statute provides that the appeal shall be tried as in equity, and that the court may make such assessment as should have been made, or direct the making of such assessment by the council. Code of 1897, Section 839 (Compiled Code, Section 3903). It seems to me that, after appeal, the only assessment that can be considered is the final assessment by the district court, or perhaps by the Supreme Court, on appeal to it, and that there is no certificate upon which the waiver can be indorsed. It is true that the statute reads that the waiver may be in a separate agreement, but the tax could not be certified to the county treasurer for collection by such agreement. It follows, I think, that the property owner is not called upon to sign such waiver until there is a proper assessment. We have so held. In *Barber Asphalt Co. v. District Court*, 181 Iowa 1265, it was held that penalties for the nonpayment of assessments for the construction of street improvements are held in abeyance, pending appeal to determine the legality and correctness of such assessments. We said in that case:

"The landowner exercised his statutory right of appeal from the assessment of the board of supervisors. The question thus presented was triable *de novo*. The right of appeal would be a barren right if, pending the appeal, penalties should be permitted to absorb the fruits of final success. The appeal is a part of the statutory method provided for determining the amount of assessments which should be levied upon the land."

See, also, *Rystad v. Buena Vista County Dr. Dist.,* 170 Iowa 178, where it was held that penalties for the nonpayment of assessments of benefits for the construction of drainage improvements are held in abeyance, pending an unsuccessful appeal on behalf of the drainage district, reducing the assessment made by the board. In the instant case, as in the original *Rystad* case, the appeal to this court was not by the property owner. See, also, *Hedge v. City of Des Moines,* 141 Iowa 4, 25. The proper assessment was held to draw interest, but it was held that

no penalties should be incurred, up to the time of the decision in the Supreme Court. By a recent statute, Chapter 184, Acts of the Thirty-ninth General Assembly, amending Section 751, Supplemental Supplement to the Code, 1915 (Compiled Code Section 3808), relating to the powers of cities and towns to open, widen, improve, and repair streets, etc., it is provided that the city council may extend the assessments over a period not to exceed 20 years, payable in equal annual installments, and so on, thus indicating that, as to such assessments at least, it was not the intention of the legislature to deal harshly with property owners. The policy of the state is to allow appeals. A slight change in the statute by the legislature would clear up the uncertainty. It could provide that if, on appeal, the owner is not successful, he could not pay in installments. This would protect the city from frivolous appeals, and at the same time protect the owner from unjust assessments. It seems to me that plaintiff ought not to be penalized for asserting his right of appeal given by the statute, and correcting the exorbitant and unreasonable assessment. The law contemplates a fair assessment. It was the duty of this council to make a fair and just assessment, and upon such an assessment, the owner might pay in installments. If the council does not make such a just assessment, why should not the property owner be entitled to pay in installments when such an assessment is finally made? The property owner ought not to be burdened in the manner here attempted, without receiving the equivalent of the assessment in benefits. If it be thought, as the majority opinion seems to hold, that the right to pay the assessment in installments is a consideration for waiving objections to illegal and exorbitant assessments, then I submit that the consideration is grossly inadequate. It is not worth $3,500 for the privilege of paying $6,500 in installments. It is a penalty. I would affirm.

EVANS and FAVILLE, JJ., concur in the dissent.