HARRY L. DICKEY et ux., appellees, v. CITY OF BURLINGTON, appellant.

ARTHUR J. BREUER, appellee, v. CITY OF BURLINGTON, appellant.

LIZZIE W. SWANSON, appellee, v. CITY OF BURLINGTON, appellant.

No. 48801.

(Reported in 73 N.W.2d 96)

 █ 

F. M. Holsteen, City Attorney, and Pryor, Hale, Plock, Riley & Jones, of Burlington, for appellant.

Hirsch, Riepe & Wright, of Burlington, for appellees Lizzie W. Swanson and Arthur J. Breuer.

Poor, Cray, Walter & Youngstrom, of Burlington, for appellees Harry L. Dickey and Althea Dickey.

LARSON, J.—From a decree reducing assessments made for paving of a part of Division Street in Burlington, Iowa, in actions brought by Harry L. Dickey and Althea Dickey, Arthur J. Breuer and Glad Tidings Assembly of God Church, of Burlington, Iowa, and Lizzie W. Swanson, on three separate appeals, which were consolidated for trial, the defendant City of Burlington, Iowa, appeals. The only issues tried to the court were whether the assessments were in proportion to the special benefits conferred upon the properties and whether they were in excess of the benefits as provided by section 391.48, Code of Iowa, 1954, with the exception of the Dickey property where no issue seems to be raised as to whether the assessment was in excess of 25% of the actual value of the property. Defendant, however, raises here a second question as to whether the trial court had jurisdiction to decide the appeal as to the Swanson and Breuer assessments.

I. Defendant contends there was neither pleading nor proof in the district court of any specific objections made by Swanson or Breuer before the City Council, and therefore they should not have been considered by the court. The record, however, discloses the Swanson petition alleged: "4. That plaintiff duly filed objections to the assessments against said lots with the City Council. * * * 6. That said assessments are unjust, illegal, and inequitable for the following reasons, to-wit:

a. The assessments * * * are in excess of the benefits conferred upon the property by the improvement. b. Said assessments are in excess of 25% of the actual value of the said lots at the time of the levy. * * *." The Breuer petition was substantially the same. The City answered in each case: "Defendant admits the allegations contained in paragraph 4 of plaintiff's petition * * *" and "Defendant specifically denies each and every allegation contained in paragraph 6 and subparagraphs a, b, c and d thereof * * *."

The Dickey petition specifically alleged that their objections were made before the City Council in writing, and attached a copy thereof. Among these specific objections were the two listed in the other petitions under a. and b. The City's answer admitted these allegations also, but denied the assessments were excessive.

Unquestionably, all the cases were considered as properly raising these two issues, and by agreement were consolidated and tried to the court without objection. Thus it is only proper to assume that the same specific objections were urged both before the council and now before the court. If new ones were attempted, some objection would have been properly made. Clearly, complainants had not waived these specific objections, which is the real basis upon which courts have refused to consider such new objections raised for the first time on appeal. Andre v. Burlington, 141 Iowa 65, 117 N.W. 1082; Tjaden v. Town of Wellsburg, 197 Iowa 1292, 198 N.W. 772; Marshalltown Light, Power & Ry. Co. v. Marshalltown, 127 Iowa 637, 103 N.W. 1005. The City did not question the jurisdiction below, and, while it is true the question of the want of jurisdiction of the court may be raised at any time and is not waived even by consent (Orcutt v. Hanson, 71 Iowa 514, 32 N.W. 482; Johnson v. Purcell, 225 Iowa 1265, 282 N.W. 741), we fail to find in the matter before us a proper application of that rule. There was no lack of jurisdiction in the court, for the subject matter and the parties were properly before it, and we think it is now too late to raise before us the question as to whether the specific objections pressed before the trial court had been made

before the council. If they had been questioned before the trial court, proof of the facts could have been produced, and upon the determination of that fact the court would have acted. We cannot determine it now and must assume, as did all parties below, that the same objections were urged before the council and had not been waived by objectors. The trial court therefore could and properly did consider them in determining the values and benefits in issue. We conclude there was no jurisdictional defect disclosed that would justify setting aside the court's decision in the Swanson and Breuer cases.

II. The next question is whether the court was correct in directing a reduction of all the assessments appealed, except Swanson's Tract A which was allowed to stand. That assessment is not involved in this appeal. For convenience, the tracts involved will be referred to as follows: The South 300 feet of the East 60 feet of Lot 11 in Pierson's Subdivision, containing .413 of an acre, will be referred to as Swanson Tract A. The South 300 feet of Lot 3 (extending 362.17 feet east of Tract A) in Pierson's Subdivision, containing 2.494 acres, will be referred to as Swanson Tract B. The South 300 feet of the West 275.4 feet of the North 420 feet of Lot 9 in Pierson's Subdivision, containing 1.896 acres, will be referred to as Breuer Tract A. The South 300 feet of the East 96.7 feet of Lot 10 in Pierson's Subdivision, containing .666 of an acre, lying west of Tract A, will be referred to as Breuer Tract B. The Dickey property being part of Lot 12 in Pierson's Subdivision, containing 6.15 acres all in one piece, will be referred to as the Dickey property.

Division Street runs in an easterly and westerly direction, and the paving project in question extended from the east line of Roosevelt Avenue, the western city limits, to a point about one mile east, identified as the west line of Leebrick Street. The pavement replaced a rock all-weather road and was a 20-foot concrete slab 8 inches thick without curbing. Shoulders of three to four foot widths were provided on each side, outside of which were deep ditches. The total cost of the improvement was $92,929.10.

While considerable conflicting evidence was produced as to

the actual value of each tract, the trial court made a finding as to those values which disclosed that the City's assessment was in excess of 25% of such value. However, the court's final decision in each case was based on the finding that the amount of special benefits conferred by the improvement was far less than that assessed by the defendant, City of Burlington. We must review these decisions to determine for ourselves whether the court was correct in its finding as to the amount of such special benefits.

At the outset we are satisfied the record discloses ample evidence to sustain the trial court's finding that this particular improvement was of greater benefit to the general public than to the properties in this locality which were assessed for the improvement; that the land concerned. is of low value, not readily salable, and mostly used for agricultural purposes; and that the type of pavement was not the usual kind found on city streets but was usually found in rural territory. There was also some evidence offered as to errors in construction and a resulting rough and inferior pavement, but little or no consideration was given this complaint by the district court and we think it of little significance to the issue here involved.

What were the benefits conferred upon these tracts by this improvement? Section 391.48, Code of Iowa, 1954, provides: "When any city council levies any special assessment for any public improvement against any lot, such special assessment shall be in proportion to the special benefits conferred upon the property thereby and not in excess of such benefits. Such assessment shall not exceed twenty-five per cent of the actual value of the lot at the time of levy, and the last preceding assessment roll shall be taken as prima-facie evidence of such value."

 Appellant contends that objectors have the burden of showing the extent of the benefits conferred for the reason that the action of the City Council in making the assessment is presumed to be correct. The correctness of this contention is established by a great number of our decisions holding that

the assessment is presumed to be correct, just and equitable, and the burden is on the complaining property owner to prove the contrary. Rood v. City of Ames, 244 Iowa 1138, 60 N.W.2d 227, and many cases cited therein. It was also held therein that the benefits may not necessarily be limited to the present use of the property, as possible future uses and reasonably anticipated prospects may be considered. Also see Gronbech v. Town of Jewell Junction, 213 Iowa 358, 239 N.W. 26. The trial court, at the request of counsel for both parties, viewed the premises in the company of counsel for all parties. It saw and heard the witnesses and was therefore in a much better position than we are to determine this matter, but of course its decision is not final or binding upon us. The evidence did not indicate this land could be easily platted for sale as building lots, nor that there was any good reason to do so. It is not an easy task in such cases to arrive at the actual value of a property or an assessment that will be accurate and just. Hansen v. Missouri Valley, 178 Iowa 859, 160 N.W. 340.

From a careful examination of the record we are unable to arrive at any conclusion substantially different from that of the learned district court. There is no dispute as to the law, and it is quite apparent the trial court recognized and applied correctly every proposition of law involved therein. In its findings of fact and conclusions of law the court said:

"There is a presumption in favor of the assessments made by the City Council and the burden rests upon a property owner, who complains of an assessment made, to overcome this presumption of the correctness of the assessment as made. The uses to which the property, subject to assessment, may reasonably be put and the prospects of such use are proper elements to be taken into consideration in determining the actual value of the property at the time of the levy. * * * The assessment must be in proportion to the special benefits conferred upon the property by the improvement but shall not be in excess of the special benefits conferred nor in excess of 25% of the actual value of the property at the time of the levy of the assessment."

There can be no serious objection to this statement of the law, and it is quite evident the court applied these rules to the facts introduced in evidence and was able to fairly interpret the testimony after having viewed the several premises.

The testimony as to the Breuer Tracts A and B showed both had been sold to the Glad Tidings Assembly of God Church in 1953 for $5000 under contract, which provided for no down payment and monthly installments of $50 each plus interest. At the time of the assessment the church had built a cement-block-covered basement 26 by 60 on Tract B and was holding church meetings therein. In 1951 the Breuers had bought this poor, rough and rocky land, not capable of being cultivated, for use in connection with other land they owned north thereof, for $4900. There is a steep westerly upgrade on Division Street in front of these tracts forming a bluff which declines sharply northward to a creek which runs through the property. The creek enters Tract B about 150 feet north of Division Street and angles southeasterly across both tracts and enters an arched culvert approximately 6 by 10 feet some 10 feet under Division Street. North of the creek the United States Government owns a 10-foot-sewer easement running across both tracts southeasterly. This is a 12-inch sewer with necessary manholes. There is also a right-of-way easement across these tracts to the Conger property west of Tract B, which enters near the east line of Tract A and extends northwesterly running about 30 feet north of the sewer easement. There are two small, poorly constructed frame houses and a garage on Tract A, also set on a line extending from the southeast to the northwest, and a very poorly constructed one-room frame house on the north end of Tract B, which the Breuers had rented for $10 per month. The middle house had four rooms and rented for $30 per month, and the east house was a furnished three-bedroom affair which rented for $7 per week. The class of tenants, of course, was poor and it was difficult to collect that little rent. Neither tract has city water or gas facilities. The labor and some of the material used on the church basement was donated. Because of the bluff and the sharp decline to the rear, there is

very little parking space for use by the church and it will accommodate not more than half a dozen cars. In spite of this the church group has subsequently built the church and continues its use as a place of worship.

Because of the roughness of the land it seems attractive for no other purpose than its present use and grazing. The assessment made by the City Council on April 9, 1954, against Tract A was $800, and while plaintiffs' witnesses gave it an actual value of $2500, $800 and $800, and defendant's witnesses estimated it at $3657, $3100 and $4464, the court found the actual value of Breuer Tract A to the assessable depth of 300 feet was $800. The plaintiffs' witnesses estimated the benefit to Tract A due to the improvement was $100, $100 and maybe. $50. One witness, Henry R. Naumann, a realtor of long experience, expressed the opinion that Tract A was little better than a dump and received no benefit by the pavement. Defendant introduced no evidence as to benefits in any of these cases, relying upon the well settled presumption that the assessment was correct. Chicago, R. I. & P. Ry. Co. v. Town of Dysart, 208 Iowa 422, 223 N.W. 371, and cases cited therein.

It is clear the court determined the improvements upon Tract A were practically valueless, and from the description of the construction we cannot say that is wrong. The evidence is even more convincing that the benefit received by this tract was small and that the reduction of the assessment from $800 to $100 should be upheld.

As to Tract B we have a little more difficulty, for here the court found the actual value of the property was only $1000 and reduced the assessment from $520 to $200. Plaintiffs' witnesses estimated the actual value at $600, $300 and something less than $2500, for the best part of the tract purchased for $5000 was north of the 300 feet involved herein. Defendant's witnesses estimated its value at $9900, $10,800 and $9340, though one witness did not testify as to this property. The plaintiffs' witnesses estimated the benefits as $150, $100, $200 and $100. Thus there was a wide divergence of opinion as to the actual value, probably due to the erection of the church on this tract. Its value for any other purpose seems quite speculative, and due to its narrow grounds it seems not too well adapted for

church purposes. While we may believe the actual value set by the court was a little low, we are convinced the reduction of the benefit from $520 to $200 was justified. Due to the small shoulders, the deep ditch, and the restricted parking along the pavement, little was gained by a change from a rock all-weather road to this curbless slab of concrete.

The Swanson property is also located on the north side of Division Street some 834 feet east of the west city limits. Tract A containing .413 of an acre is the west 60 feet of this property, and Tract B, containing 2.494 acres and fronting 362.17 feet on Division Street, is the balance of the property. Together with eight or nine acres to the west, later purchased by the United States Government for approximately $4000, this land was acquired in 1941 for $6700. The best land was taken by the government, and the best of that left is Tract A which contains no buildings. The assessment of $112.50 by the City Council was permitted to stand, and, as we said, there is no appeal as to Tract A. However, the council fixed the assessment on Tract B at $1687.50 and the trial court reduced it to $700. This west 169 feet is fair land and slopes upgrade from Division Street to the house, barn, garage and other outbuildings. North of the barn there is a steep downgrade and the floor of the basement of the barn at the rear is above ground. The residence is an old two-story frame house covered on the outside with imitation brick siding. The buildings are all that is left of a very badly cut-up farm, and this accounts perhaps for the wide estimates as to their value. Plaintiffs' witnesses set the actual value at $6000, less the value of Tract A which seemed to be valued by others at $500, $6175 and $6475. Defendant's witnesses estimated the value at $6950, $14,600 and $8370. The court fixed it at $6000.

The eastern part of Tract B of about 166 feet seemed low and good for little but pasture. A creek which is a natural watercourse enters this part at the southwest corner and flows northeasterly winding to the east line of Tract B. There was a cement abutment at the outlet of the tube under Division Street where the creek entered this tract, which seemed to cause considerable washing on the north bank of the creek on the Swanson Tract B. There was no gas or water service to this prop-

erty and the dwelling was far from being modern. While the property was adapted to agriculture, the loss of land has seemed to have curtailed such pursuits, and the place is now used mainly as a dwelling. The plaintiffs' witnesses estimated the benefits as none by Mrs. Swanson, $665 and $700. The defendant did not introduce evidence as to benefits. The court appears to have given considerable weight to the judgment of the realtor Naumann. His 21 years of experience provided one of the best, if not the best, qualification of all the able and competent witnesses, which included a contractor, an engineer, the city assessor, and other realtors.. We are content that this as well as other testimony furnished by plaintiffs provided the court with a sufficiently clear guide, sometimes referred to as a guide to an unerring reduction, but meaning the sufficiency of proof, to be of substantial aid to the court in its endeavor to fix the correct amount of the assessment. Chicago, R. I. & P. Ry. Co. v. Town of Dysart and Tjaden v. Town of Wellsburg, both supra. The weight of the evidence, we think, justifies the reduction of the assessment on Tract B to the sum of $700, and it should therefore be sustained.

The last tract known as the Dickey tract is situated at the southeast corner of Division Street and Roosevelt Avenue right at the city limits. The tract has 9¼ acres, but only the north 300 feet is included in this assessment, reducing the size of the property to an area of 6.15 acres. The frontage on Division Street is 894 feet. Upon this tract is a two-story brick house between 50 and 75 years old, two frame chicken houses, a frame corncrib, garage, barn, and pump house. The land has been used solely for agricultural purposes prior to this time and its intended use in the future is the same. Crops, hogs and cattle are raised on this relatively small rolling piece of ground. There is an easement in favor of the Iowa Highway Commission for drainage running diagonally 650 feet across the Dickey land. It drains lands from both the east and west sides of Roosevelt Avenue, and water is usually flowing in the open ditch. This property also has no gas, water or sewer service available, and though it appears there is a United States Government housing area north of this tract, the Division Street area is not

approved for F. H. A. loans. The property was purchased by the Dickeys in 1947 for $13,500 and no major improvements have been made to the property since that time. The testimony on behalf of plaintiffs valued the property at $1500 per acre, $1750 per acre, and $1750 per acre, on April 9, 1954. The defendant City's witnesses by various methods estimated the actual value of this tract on that date at $22,173, $18,350 and $19,895. Plaintiff believed the benefit to his property due to the pavement did not exceed $150 an acre. Witness Prall said it could not be greater than $250 per acre, and Mr. Naumann believed $250 an acre was right. The court determined the actual value of the Dickey tract was $11,000 and that the special benefits conferred by the improvements amounted to $1537.50 and reduced the assessment of $3487.50 accordingly. In view of the testimony, considering the fact that this tract was served by already-paved Roosevelt Avenue, and the rural nature of this improvement, we are satisfied with the trial court's determination, especially as to the benefit received.

Though the reductions made are substantial, and while the court seems to have accepted the lower valuation testimony in each case as correct, this it was in a position to do, for as pointed out, the trial court had before it the witnesses and made a visit to the premises whereby it could clearly visualize and interpret the testimony. Such facts may well justify that action, Toben v. Town of Manson, 193 Iowa 750, 187 N.W. 599, and we should give that court's finding careful consideration. Lee v. Ames, 225 Iowa 1061, 283 N.W. 427, and cases cited therein.

As it does not appear that such findings are not sustained by the weight of the evidence, the decree entered by the district court is affirmed.—Affirmed.

All JUSTICES concur except PETERSON, J., who takes no part.