**Charles J. GOODELL and Geraldine Goodell, et al., Appellees,**

v.

**CITY OF CLINTON, Iowa, Appellant.**

**No. 54897.**

Supreme Court of Iowa.

Dec. 15, 1971.

Warren C. Johnson, Clinton, and Herrick, Langdon, Belin & Harris, Des Moines, for appellant.

Shaff, Farwell & Senneff, Clinton, for appellees.

LeGRAND, Justice.

This is a consolidated appeal by 24 dissatisfied property owners who challenge assessments made against them for paving a portion of Second Avenue South in the City of Clinton. The trial court entered a decree reducing all assessments by 40 percent. The City appeals, claiming the assessments as made were correct and should be reinstated. The property owners cross-appeal, asserting that the assessments, even as reduced, far exceed the benefits which their individual properties enjoy as a result of the special improvement. We affirm the trial court on both appeals.

Second Avenue South is one of Clinton's busy streets. The record shows it handled 4500 vehicles a day before the paving improvement here under attack. According to a survey made by the city's planning consultants in 1964, this street would become an important thoroughfare for the movement of anticipated larger traffic loads if the city realized its projected growth to the west.

Acting on the recommendation of the planning consultants, the city council initiated proceedings in 1967 to widen and improve Second Street South along a five-block route from Bluff Boulevard to South 14th Street. Since the city already had a 66-foot right-of-way, the street could be widened without acquiring additional land. When completed, the street had been extended from 18 feet to 41 feet, including a six-inch curb on each side.

The total cost was $169,322.31. Approximately 30 percent—$49,504.88—was assessed against the 84 property owners involved. By ordinance the maximum street width for which assessment could be made is 30 feet. Beyond that the city bears the entire cost. In the instant case assessment was further limited because the existing 18-foot slab was resurfaced and used as

part of the new street. The property owners were not charged for this part of the work. They were assessed for only four-and-one-half feet of new concrete paving and a two-foot curb and gutter on each side of the street. No assessment was made for the paving of intersections, installing storm sewers, or providing new sidewalks.

This special improvement was undertaken by the authority granted the city in chapter 391, The Code, 1966. We need not concern ourselves with the formal requirements of that chapter, since the parties have stipulated that all procedural matters were complied with. The sole issue presented is the claim the assessments exceed the benefits which accrued to plaintiffs from the project. We limit our discussion accordingly.

 Several governing principles which have been announced over and over in assessment cases bear repeating again before we consider the facts presented by this record:

(1) Once a city council has properly ordered a special improvement (which is here conceded), there is a presumption of necessity and a presumption, too, that some benefit results to the assessed property owners.

(2) There is a presumption the amount of the assessment is correct and does not exceed the special benefit accruing from the improvement.

(3) In considering the benefits flowing from a special improvement, it is proper to consider future uses and expectations as well as present use to which the property is put.

(4) The burden is on the protesting property owner to show his assessment is excessive by evidence which includes proof of the actual benefit to his property. In the absence of such evidence, the assessment must stand.

The authority upon which these rules rest may be found in Wharton v. City of Oskaloosa, 158 N.W.2d 834, 835 (Iowa 1968); Persinger v. City of Sioux City, 257 Iowa 727, 730, 133 N.W.2d 110, 111 (1965); Beh v. City of West Des Moines, 257 Iowa 211, 221, 131 N.W.2d 488, 494, 495 (1964); Dickey v. City of Burlington, 247 Iowa 116, 120, 73 N.W.2d 96, 99, 100 (1955); Gingles v. City of Onawa, 241 Iowa 492, 496, 497, 41 N.W.2d 717, 718, 720 (1950); Brenton v. City of Des Moines, 219 Iowa 267, 269, 257 N.W. 794, 795, 796 (1934); Chicago, Rock Island & Pacific Railway Company v. Town of Dysart, 208 Iowa 422, 425, 223 N.W. 371, 372 (1929); In re Resurfacing Fourth Street, 203 Iowa 298, 303, 211 N.W. 375, 377 (1926); Curtis v. Town of Dunlap, 202 Iowa 588, 593, 210 N.W. 800, 803 (1926); Lytle v. City of Sioux City, 198 Iowa 848, 849, 200 N. W. 416 (1924); Tjaden v. Town of Wellsburg, 197 Iowa 1292, 1296, 198 N.W. 772, 773, 774 (1924); Vail v. City of Chariton, 181 Iowa 296, 302, 164 N.W. 597, 599 (1917); C., R. I. & P. R. R. Co. v. City of Centerville, 172 Iowa 444, 447, 153 N.W. 106, 107 (1915); Camp v. City of Davenport, 151 Iowa 33, 37, 130 N.W. 137, 139 (1911).

As usual the difficulty lies not in declaring these abstract rules but in applying them to the circumstances of a particular controversy. That task is not simplified by the fact that few special assessments meet with enthusiasm from property owners. Here the protest was even greater than usual. Of 84 taxpayers affected, 70 objected to the city council. Twenty-four have pursued the matter to this court.

Their complaints center around the claim they have been victimized for the sake of Clinton's potential future without compensating benefits to themselves.

To a man they insist the old street was satisfactory; that it served their purposes well; that it was in a state of good repair; and that the only reason for converting it to a 40-foot thoroughfare was for the con-

venience of the city generally rather than for any advantage to them.

They further vehemently deny the "benefits" they supposedly gained. They say traffic is noisier and moves dangerously fast; that ingress and egress, despite the city's contention to the contrary, are more difficult; that there never was a drainage problem so the claimed improvement in that area is imaginary. They also dispute the safety factor, particularly for young children in the area. It is clear they are hard put to perceive any advantage from this new street; but, undoubtedly because the presumption is otherwise, they grudgingly concede nominal benefits ranging from $15.00 to $100.00 depending on the property involved.

The city, on the other hand, paints an entirely different picture. Its evidence shows the old street to have been inadequate, unsafe, and badly in need of repair. It was a 40-year-old 18-foot concrete slab of a now obsolete design. It had only ditches and culverts—not storm sewers—to carry off surface water. It had nine-foot traffic lanes, which are no longer generally acceptable. There were no curbs or gutters. Ingress and egress were difficult; drainage was a constant problem; and congestion on this old two-lane street would inevitably become increasingly worse as the city fulfilled its promised growth.

The new street, the city says, is safer, cleaner, more sightly, and provides a vastly better route for the movement of traffic.

Obviously the parties are poles apart, not only as to why the improvement was ordered, but also as to its effect on the property of the protesting owners.

It is clear from the record that the property owners are convinced they are being asked to subsidize a paving project which was conceived and consummated for the welfare of the city at large—one from which they enjoy at best only nominal benefits.

Of course, it is indisputable that a paving improvement of this kind usually involves both general and special benefits. That is why only part of the cost is assessed against the abutting property owners, and the remainder paid from city funds. The finished street is available to all; and all, including these plaintiffs, pay for it through general taxation. In addition, however, owners whose property abuts on the street are said to obtain additional benefits for which they must separately pay.

For them it is a *special* improvement from which they receive *special* benefit and for which they pay a *special* assessment. As we recognized in Dickey v. City of Burlington, supra, 247 Iowa at 121, 73 N.W.2d at 100, the difficult problem is to determine how much of the improvement represents a special benefit to the individual rather than a general one to the city.

That is the norm against which these assessments must be tested under the provisions of section 391.48, The Code, 1966, which provides as follows:

"When any city council levies any special assessment for any public improvement against any lot, such special assessment shall be in proportion to the special benefits conferred upon the property thereby and not in excess of such benefits. Such assessment shall not exceed twenty-five percent of the actual value of the lot at the time of levy, and the last preceding assessment roll shall be taken as prima facie evidence of such value."

It is not claimed the assessments exceeded 25 percent of the value of the lots, and we therefore do not consider that part of the statute.

As already noted the assessments fixed by the council are presumed correct, and the plaintiffs have the burden of proving they are excessive. Did the plaintiffs sustain their burden of showing the assessments made exceed the benefits covered? The trial court found they had done so and

made an across-the-board reduction of 40 percent.

Virtually all the evidence was from persons interested in the result. Even the real estate brokers who testified were also plaintiffs in the case. The defendant city called only its own engineer except for a consulting engineer who had been employed to testify as an expert.

■ Our appeal is de novo, although we give weight to the findings of the trial court. Like the trial court, we cannot believe a new and wider street replacing an old obsolete one is of only nominal value to the abutting owners. We believe the evidence fairly shows a much more substantial advantage than plaintiffs are willing to acknowledge.

But, again like the trial court, we are impressed by the fact that this project was undertaken at the suggestion of the city's planning consultant partially for reasons of more importance to the city as a whole than to the plaintiffs individually. There is some support for plaintiffs' argument that they were as well off with their 18-foot street—albeit repairs or resurfacing would have been required (for which, under city policy, plaintiffs would not have been assessed)—than with a widened 40-foot street. We must agree that much of the motivation for the improvement was part of a master plan for the orderly and safe movement of traffic based on the city's projected growth.

This does not mean, however, that plaintiffs received *no* benefit from the improvement. It simply means plaintiffs should not pay for those benefits accruing to the community at large. We review the record with this in mind.

In addition to the testimony at trial, there were numerous photographic exhibits. They vividly show the present wide, spacious, smooth street as contrasted to the narrow, obsolete, poorly maintained one which it replaced. The trial court viewed the premises to help reach a proper evaluation of the evidence. We give this fact some consideration along with, and in the same vein as, the fact we give effect to the trial court's opportunity to see and observe the witnesses. Dickey v. City of Burlington, supra, 247 Iowa at 121, 73 N.W.2d at 100; Wharton v. City of Oskaloosa, supra, 158 N.W.2d at 836 (although there the view of the premises was used as substantive evidence by stipulation of the parties.)

■ Assessment cases cannot be determined with mathematical certainty. The evidence is necessarily based on opinion, some of it made more conjectural because it attempts to project present conditions into the future. These opinions must be taken with those reservations arising from the nature of the case, the self-interest of the witnesses, and the uncertain basis upon which they rest. Curtis v. Town of Dunlap, supra, 202 Iowa at 593, 210 N.W. at 803. We have, on the one hand, city officials attempting to justify a decision long since made and, on the other, property owners seeking to minimize the taxes they must pay for an improvement they did not want. Recognizing this problem, we have said, "It is exceedingly difficult to arrive at an assessment in such a case that shall be accurate and just. Approximation is all that can reasonably be expected." Tjaden v. Town of Wellsburg, supra, 197 Iowa at 1296, 198 N.W. at 774. Although this was there said to sustain the original assessment made by a city council, it is equally applicable when such an assessment is to be reduced.

The trial court relied heavily on the Michigan case of Fluckey v. City of Plymouth, 358 Mich. 447, 100 N.W.2d 486 (1960). (See also Brill v. City of Grand Rapids, 383 Mich. 216, 174 N.W.2d 832 (1970).) While we do not adopt all the language of those decisions—nor their result—we agree with much that is there said about the distinctions to be made between *general* and *special* benefits when a neighborhood street is converted to one designed to carry greater volumes of traffic in and out of the community.

■ The trial court found that both the city and the plaintiffs had reaped substantial benefit from this badly needed paving improvement. After noting that plaintiffs should not be assessed merely to provide a four-lane street to accommodate some 4500 cars daily using it in going to and from Clinton's business and commercial areas, the trial court added, "As previously pointed out, the court went to the area in question to better understand the photos and other exhibits * * * under Hampton v. Burrell, 236 Iowa 79, 17 N.W.2d 110. After reviewing the photos before and after the improvement, and after seeing the premises shown in the exhibits, it would not be a fair statement * * * to say that the special benefits to the properties * * * were only nominal."

We agree with this conclusion and agree, too, that plaintiffs' assessments must be reduced. The city argues plaintiffs are barred from this relief because their evidence did not include proof of the actual benefits their properties received as is required by our previous holdings. Wharton v. City of Oskaloosa, supra, 158 N.W.2d at 835–836; Persinger v. City of Sioux City, supra, 257 Iowa at 729, 730, 133 N.W.2d at 111; Gingles v. City of Onawa, supra, 241 Iowa at 496, 497, 41 N.W.2d at 720.

We do not find this correctly reflects the record. Plaintiffs did—without exception—place a value on the actual benefits to their property. In each case it was nominal only. The highest figure was $100.

There is no doubt from the record this represented their fixed and firm conviction. Obviously the trial court did not agree; nor do we. But the fact their opinions admitted only nominal rather than substantial benefit does not mean there was no evidence to overcome the presumption that the assessment as made by the city council was correct. Otherwise one whose property *was* only nominally benefited could never challenge an excessive assessment.

The decision to reduce the assessments by 40 percent is said to be without substantial support in the record. But we believe there is ample evidence to justify such a result.

We faced somewhat the same problem in upholding reductions made by the trial court in Wharton v. City of Oskaloosa, supra, 158 N.W.2d at page 837, where we said the trial court's task in determining proper assessments was "difficult, complicated, and technical." We feel that observation is equally applicable here and we decline, as we did there, to disturb the findings.

We affirm the decree on both the appeal and the cross-appeal.

Affirmed on both appeals.

All Justices concur.