**DES MOINES UNION RAILWAY CO., Appellee,**

v.

**CITY OF DES MOINES, Iowa, Appellant.**

No. 89–758.

Supreme Court of Iowa.

July 18, 1990.

Bruce Bergman and Kathleen Vanderpool, Asst. City Attys., for appellant.

Thomas G. Fisher, Jr. of Duncan, Jones, Riley & Finley, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO, and NEUMAN, JJ.

LARSON, Justice.

In order to finance a downtown improvement project, the City of Des Moines levied a special assessment against property owned by the Des Moines Union Railway Company. Union Railway appealed the assessment, and the district court reduced to $0 the assessments on twelve of the thirteen tracts involved on the ground that the owner received no benefits from the project. We reverse and remand.

In 1987, the Des Moines City Council adopted a resolution of necessity and ordered the development of a project commonly known as the Court Avenue Street-

scape Project. Improvements to the streets, sidewalks, and adjacent lighting were called for in the plan, as well as general aesthetic improvements.

An assessment plat was prepared which established assessment districts and proposed specific assessment amounts as to each tract. Under the plan, the City would pay seventy-three percent of the cost of the project, and the adjoining owners would pay the remaining twenty-seven percent. The City established three zones with varying percentages of assessments in each zone according to the location of the property. These zones were seventy percent, twenty percent, and ten percent. The purpose of establishing the zones was to afford appropriate recognition of the increased benefit to property located nearest to the improvements.

Union Railway owns thirteen parcels located within the assessment area. For the Court Avenue improvements, none of the Union Railway's parcels were located in the seventy percent zone, eleven of the thirteen parcels fell into the twenty percent zone, two in the ten percent zone. For the Fourth Street improvements, four of the thirteen parcels fell in the seventy percent zone, three in the twenty percent zone, and six in the ten percent zone. The City assessed Des Moines Union Railway a total of $52,482.34. Union Railway does not dispute the assessment procedures used by the City; it contends simply that no benefits were conferred on its property and therefore it should pay nothing on the twelve tracts involved. (There is no dispute as to the tract on which the district court left the assessment intact.)

■ An assessment may not be permitted if it exceeds the actual benefit of the project to the property. Relevant portions of Iowa Code section 384.61 (1987) provide:

The total cost of a public improvement, except for paving that portion of a street lying between railroad tracks and one foot outside of the tracks, or which is to be otherwise paid, must be assessed against all lots within the assessment district in accordance with the special benefits conferred upon the property, and not in excess of such benefits.

■ It is presumed that a special assessment is correct and does not exceed the benefits conferred. *Goodell v. City of Clinton*, 193 N.W.2d 91, 93 (Iowa 1971). In considering what benefits have resulted from the improvement, it is proper to consider future uses for the property and expectations of the property owner as well as the present use. *Id.*

■ With these provisions in mind, we look to the evidence in this case. Our review is de novo. *Id.* at 95. The assessment project consists generally of street resurfacing, replacement of sidewalks, installation of new pedestrian and traffic control lights and improvement of the drainage system. Landscaping, including trees, was added to improve the general appearance of the area.

Union Railway challenged the assessments on the ground that its use of the property is largely for railroad purposes, and the improvements to the area are largely aesthetic, of no benefit to railroad property. In fact, the railway argues, improvements to the property make it more accessible to pedestrians who cause problems by congregating in the area and even climbing on the railroad cars.

In a similar case, we said that

it is indisputable that [an] improvement of this kind usually involves both general and special benefits. That is why only part of the cost is assessed against the abutting property owners, and the remainder paid from city funds. The finished street is available to all; and all, including these [property owners], pay for it through general taxation. In addition, however, owners whose property abuts on the street are said to obtain additional benefits for which they must separately pay.

For them it is a *special* improvement from which they receive *special* benefit and for which they pay a *special* assessment. As we [have] recognized ..., the difficult problem is to determine how much of the improvement represents a

special benefit to the individual rather than a general one to the city.

*Goodell*, 193 N.W.2d at 94.

*Goodell* succinctly stated the dilemma facing city authorities in such cases:

> We have, on the one hand, city officials attempting to justify a decision long since made and, on the other, property owners seeking to minimize the taxes they must pay for an improvement they did not want. Recognizing this problem, we have said, "It is exceedingly difficult to arrive at an assessment in such a case that shall be accurate and just. Approximation is all that can reasonably be expected."

*Id.* at 95 (quoting *Tjaden v. Town of Wellsburg*, 197 Iowa 1292, 1296, 198 N.W. 772, 774 (1924)).

Based on our de novo review of the record, we believe the evidence shows that neither the primary present use, nor the most likely future use, of the property is for railroad purposes. Although for approximately 100 years the southern portion of these tracts has been used for the operation of a railroad, time has changed the use of the property. Much of the track has been removed or covered with asphalt. Some tracks have been rendered unusable because of damage which apparently will not be repaired. The track on one of the properties has not been used for approximately a year. Comparative photographs of the property taken in 1963 and 1988 show significant changes in the usage of the area. Many buildings previously served by the railway have been removed, and parking areas are very apparent on the property. In fact, there is parking to some degree on all of the thirteen assessment tracts involved.

While this property may be considered "railroad" property in a historic sense, it is in fact being used substantially for parking. Two of the lots are paved. All thirteen parcels are under lease to Auto Park Corporation for automobile parking. A total of 285 parking spaces are located on the property, and Des Moines Union Railway receives fifty percent of the gross revenues. All expenses, including special assessments, are borne by Auto Park. In the last three years prior to trial, plaintiff's net portion of the rentals for parking has ranged from $33,000 to $37,500.

As the City points out, many of the persons parking in these spaces work downtown and must travel across the improved streets and sidewalks to get to and from the parking lots. Improved drainage, sidewalks, and streets, we believe, improve the plaintiff's parking lots and increase user safety. We also conclude that these improvements have substantially increased the value of the land.

We disagree with the district court's conclusion that the property owner carried its burden of showing that the benefits derived by the railroad do not equal the amount of the assessments. Accordingly, we reverse and remand with directions to dismiss the plaintiff's petition.

REVERSED AND REMANDED.